Eric Bensamochan, Esq. SBN255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave., Suite 650
Los Angeles, CA 90064
Tel: (818) 574-5740
Fax: (818) 961-0138
Email: eric@eblawfirm.us

Proposed Attorney for Debtor and Debtor in Possession

*The Bensamochan Law Firm, Inc.*
*2566 Overland Ave, Ste 650*
*Los Angeles, CA 90064*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| IN RE:<br><br><br><br>DESTINATIONS TO RECOVERY, LLC<br><br><br><br><br>DEBTOR. | Case No.  1:24-bk-11877-MB<br><br>Chapter 11<br><br>**DEBTOR'S FIRST OMNIBUS OBJECTION TO CERTAIN PRIORITY WAGE CLAIMS AND REQUEST TO RECLASSIFY AS GENERAL UNSECURED CLAIMS; DECLARATION OF DANIEL SAMSON INN SUPPORT**<br><br>Date: April 30, 2025<br>Time: 1:30 P.M.<br>Courtroom: 303<br>Location:  21041 Burbank Blvd.,<br>           Woodland Hills, CA 91367 |

**TO THE HONORABLE MARTIN R. BARASH, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:**

Destinations to Recovery, LLC, the debtor and debtor-in-possession ("Debtor" or "Destinations") in the above-captioned case ("Case"), files this Objection to Certain Priority Wage Claims and Request to Reclassify as General Unsecured Claims ("Motion").  In support of the objection, the Debtor submits the following memorandum of points and authorities and the declaration of Daniel Samson ("Samson Declaration").

# I.    **INTRODUCTION**

The Debtor is a for-profit mental health and addiction treatment services organization serving teenage patients.  The Debtor provides mostly inpatient or residential treatment services at this time, although previously the Debtor provided various outpatient services at the facility. As part of its operations, Destinations sought independent contractors to provide services such as running recovery groups, providing personal fitness instruction, and conducting art therapy sessions. Five of these independent contractors have filed proof of claims in this bankruptcy case and have misclassified their claims as priority wage claims. Accordingly, the Debtor brings this omnibus objection to those five claims and asks the court order their reclassification into general unsecured claims.

The five, priority wage claims the debtor objects to are as follows:

| Ex. | Claimant | Proof of Claim | Amount | Objection |
|---|---|---|---|---|
| A | Dr. Atoosa Javaheri | 3-1 | $15,480 | Reclassify from Priority to General Unsecured |
| B | Ola Avedissian | 4-1 | $12,800 | Reclassify from Priority to General Unsecured |
| C | Jason Hennick | 11-2 | $8,675 | Reclassify from Priority to General Unsecured |
| D | Keri Poppins, LLC | 14-1 | $20,400 | Reclassify from Priority to General Unsecured |
| E | Edith Moses | 18-1 | $6,000 | Reclassify from Priority to General Unsecured |

In order to formalize the arrangement between Destinations and these independent contractors, the parties executed contracts entitled, "Agreement for Professional Services." The form of the agreements are nearly identical for each of the independent contractors. Each contains the same body of the agreement with an attached Exhibit A which describes the specific services those independent contractors are to provide.

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

Importantly, paragraph 8 of the agreements explicitly defines Claimants' status as follows:

> "Independent Contractor Status. It is the express intention of the parties that Contractor is an independent contractor and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor." (See Agreements [Ex. A-E], p. 2, ¶ 8.)

Consistent with the clear intent of the parties, throughout Claimant's engagement, Debtor treated Claimant solely as an independent contractor, issuing IRS Form 1099 to report payments for her services. At no time did Debtor withhold employment taxes, payroll deductions, or other typical employee-related payments from the compensation provided to Claimant.

Despite the explicit terms of the Agreement and the consistent tax treatment reflecting Claimant's independent contractor status, Claimants filed Proof of Claims improperly designating their claims as priority wages.

Accordingly, Debtor files this Omnibus Objection to correct the misclassification, as Claimants' assertion of  priority wage claims is unsupported by the factual circumstances, the explicit contractual terms, and governing legal standards. Debtor seeks an Order from this Court reclassifying Claimants' proof of claims from priority wage claims to a general unsecured claims.

## II.    ARGUMENT

Pursuant to Section 502(b), if there is an objection to a claim, the court, after notice and a hearing, shall determine the amount of such claim … as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –

> (1) such claim is unenforceable against the debtor and property of
> the debtor, under any agreement or applicable law for reason other than
> because such claim is contingent or unmatured, …

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

(9) proof of such claim is not timely filed, except to the extent

tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a)

or under the Federal Rules of Bankruptcy Procedure, except that—

11 U.S.C. § 502(b).

Once an objector raises "facts tending to defeat the claim by probative force equal to that of the allegations in the proofs of claims themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), then "the burden revests in the claimant to prove the validity of the claim by a preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In Consolidated Pioneer Mortgage)*, 178 B.R. 333, 226 (B.A.P. 9th Cir. 1995), aff'd 91 F.3d 151 (9th Cir. 1996) (citation omitted); *see In re Lundell*, 223 F.3d 1035, 1039 (9th Cir. 2000). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623 (emphasis added); *see Lundell*, 223 F.3d at 1039 (same); *So. Cal. Plastics,* 165 F.3d at 1248 (same); *Ankeny v. Meyer (In re Ankeny)*, 184 B.R. 64, 69 (B.A.P. 9th Cir. 1995) (same). A claimant must establish by a preponderance of the evidence that its claim should be allowed. *Lundell*, 223 F.3d at 1039. The objecting party is not required to disprove the claim. *In re Kahn*, 114 B.R. 40 (Bankr. S.D.N.Y. 1990) (emphasis added).

## A.    Claimants Are Not Employees Entitled To Priority Wage Claims

Although the Bankruptcy Code does not define wages, salaries, or commissions, the purpose of wage priority is "to enable employees displaced by bankruptcy to secure, with some promptness, the money directly due to them in back wages, and thus to alleviate in some degree the hardship that unemployment usually brings to workers and their families." *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 32, 79 S. Ct. 554, 3 L. Ed. 2d 601 (1959). The key distinction entitling a claimant to priority under Section 507(a)(3) is whether the relationship between the debtor and creditor is that of employer-employee rather than some other contractual relationship. *In re Hutchison*, 223 B.R. 586, 588 (Bankr. M.D. Fla. 1998). A claim is entitled to priority only where there is a real

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

status of employer-employee between the debtor and the claimant. *In re Grant Industries, Inc.*, 133 B.R. 514, 515 (Bankr. W.D. Mo. 1991)

Here, Claimants' relationship with Debtor lacks precisely that critical element—employer-employee status. Instead, it is one strictly founded upon an explicit independent contractor agreement. The agreement is unambiguous in it terms:

> "Independent Contractor Status. It is the express intention of the parties that Contractor is an independent contractor and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor." (Agreement, p. 2, ¶ 8.)

Claimants invoiced Debtor monthly, reflecting a professional relationship grounded not in employee wages but rather in contractual compensation. Claimants' roles were akin to that of consultants or external advisors, independently performing specialized services without the control or oversight typically indicative of employment. Indeed, these claims, rooted in an independent professional service arrangement, stands far removed from the intent and scope of § 507(a)(4).

Courts routinely hold that independent contractors do not qualify as employees for purposes of priority wage claims unless specifically provided by statute. Indeed, the Bankruptcy Court for the Central District of California has unambiguously confirmed: "Under 11 U.S.C. § 507(a)(4), prepetition claims of independent contractor individuals are not entitled to priority claim status unless they meet the standards of § 507(a)(4)(B)." (*In re EcoSmart, Inc.,* 2015 Bankr. LEXIS 4244, at *27 (Bankr. C.D. Cal. Dec. 18, 2015).)

In the case at bar, Claimants' asserted priority claim relates solely to professional services rendered. They do not involve commissions or any category of compensation enumerated under the narrow statutory exceptions of § 507(a)(4)(B). Consequently,

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

Claimants' independent contractor status precludes any claim of priority wage status

under prevailing legal standards.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the Debtor respectfully requests that this Court enter an

order:

1. Sustaining the Debtor's objection;

2. Disallowing the classification of Proof of Claim No. 3-1 filed by Dr. Atoosa
   Javaheri as a priority wage claim pursuant to 11 U.S.C. § 507(a)(4), and
   reclassifying it as a general unsecured claim;

3. Disallowing the classification of Proof of Claim No. 4-1 filed by Ola Avedissian as
   a priority wage claim pursuant to 11 U.S.C. § 507(a)(4), and reclassifying it as a
   general unsecured claim;

4. Disallowing the classification of Proof of Claim No. 11-2 filed by Jason Hennick as
   a priority wage claim pursuant to 11 U.S.C. § 507(a)(4), and reclassifying it as a
   general unsecured claim;

5. Disallowing the classification of Proof of Claim No. 14-1 filed by Keri Poppins,
   LLC as a priority wage claim pursuant to 11 U.S.C. § 507(a)(4), and reclassifying it
   as a general unsecured claim;

6. Disallowing the classification of Proof of Claim No. 18-1 filed by Edith Moses as a
   priority wage claim pursuant to 11 U.S.C. § 507(a)(4), and reclassifying it as a
   general unsecured claim;

7. Granting such further relief as is just and appropriate under the circumstances.


Dated: April 8, 2025

By: /s/Eric Bensamochan
Eric Bensamochan, Esq.
Attorney for Debtor

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

## <u>DECLARATION OF DANIEL SAMSON</u>

I, Daniel Samson, declare as follows:

1.    I am the President and Chief Executive Officer of Destinations for Teens, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"). I submit this declaration in support of the Debtor's First Omnibus Objection to Certain Priority Wage Claims and Request to Reclassify as General Unsecured Claims (the "Objection").

2.    I have personal knowledge of the facts stated herein based on my review of the Debtor's records, contracts, and financial systems, and from direct involvement in the management of the Debtor's operational and financial affairs. If called as a witness, I could and would testify competently to the truth of the matters stated herein.

3.    Debtor entered into written agreements entitled "Agreement for Professional Services" with each of the following individuals and entities (collectively, "Claimants"):

- o  Dr. Atoosa Javaheri
- o  Ola Avedissian
- o  Jason Hennick
- o  Keri Poppins, LLC
- o  Edith Moses

4.    Each agreement explicitly provides in Paragraph 8 that the Claimant is an independent contractor and not an employee, agent, joint venturer, or partner of the Debtor. The language is unambiguous and identical across all five contracts.

5.    In accordance with the agreements and prevailing tax law, Debtor consistently treated each Claimant as an independent contractor, not as an employee. Debtor did not withhold payroll taxes, did not remit W-2s, and instead issued IRS Form 1099s for compensation paid. Each contractor invoiced the Debtor monthly for services rendered.

6.    With respect to each Claimant and their corresponding Proof of Claim:

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

**A. Dr. Atoosa Javaheri (Claim No. 3-1, $15,480):**

Dr. Javaheri contracted to provide in-person recovery group sessions as a licensed psychologist. She operated independently, set her own hours, and was never integrated into the Debtor's payroll system. Her role was advisory and therapeutic in nature and not that of an employee. Her invoicing was consistent with independent contractor practice.

**B. Ola Avedissian (Claim No. 4-1, $12,800):**

Ms. Avedissian was retained to provide fitness instruction to program participants. Her services were specialized and scheduled in coordination with program needs but were rendered independently. She had no employee badge, no benefits, and reported her income through Form 1099. She maintained full control over how she conducted her sessions.

**C. Jason Hennick (Claim No. 11-2, $8,675):**

Mr. Hennick provided clinical supervision for associate therapists, a professional service governed by licensing laws. He acted in a supervisory and consulting capacity and worked independently from the Debtor's administrative or clinical staff. Like others, he invoiced monthly and was paid without withholdings.

**D. Keri Poppins, LLC (Claim No. 14-1, $20,400):**

This entity was contracted to provide drama instruction, involving expressive arts sessions delivered as adjunctive therapy. All services were performed off payroll under the name of a corporate entity, Keri Poppins, LLC. The agreement and tax reporting clearly reflect the LLC's independent status.

**E. Edith Moses (Claim No. 18-1, $6,000):**

Ms. Moses facilitated art therapy sessions under contract. She had discretion in how she conducted her workshops, submitted invoices for payment, and received Form 1099 reporting. She was never listed as an employee in internal systems, nor was she subject to employer supervision.

7.    Despite the plain terms of each agreement, all five Claimants filed Proofs of Claim asserting priority wage status under 11 U.S.C. § 507(a)(4). However, none of these

The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064

1 individuals or entities were employees of the Debtor, and none performed services

2 qualifying for wage priority status under applicable law.

3     8.    Debtor respectfully submits that each of the above-referenced claims must

4 be reclassified as general unsecured claims, consistent with the express language of the

5 contracts, the operational reality of the relationships, and controlling legal authority

6 which holds that independent contractors are not entitled to wage priority unless they

7 satisfy statutory exceptions not applicable here

8     I declare under penalty of perjury that the foregoing is true and correct. Executed

9 on this 8th day of April, 2025, at Los Angeles, California.

Daniel Samson, President of Destinations
For Teens, LLC

# EXHIBIT A

# AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is made by and between Destinations to Recovery LLC ("Client"), with a principal place of business at 20951 Burbank Blvd. Suite D Woodland Hills CA 91367, on the one hand, and Atoosa Javaheri, Psy.D. ("Contractor"), with a principal place of business at _5336 Cartun pl. # 7 Valley village CA 91607_ *(Contractor address)* in the other hand, with reference to the following:

1. **Services to be Performed**

   Contractor agrees to perform the services described in Exhibit "A", which is attached to and made part of this Agreement, and such other tasks as may be agreed to between Client and Contractor.

2. **Compensation**

   In consideration for the services performed by Contractor, Client agrees to pay Contractor at various rates the exact amounts identified in Exhibit "A."

3. **Terms of Payment**

   Contractor shall send Client an invoice monthly. Client shall pay Contractor within thirty (30) calendar days from the date of the receipt of each invoice assuming there is no dispute as the amount owed. In the event of such a dispute, Client shall pay to Contractor those sums as to which there is no dispute and shall provide a letter identifying areas of disagreement with this thirty (30) day period. Contractor will have ten (10) calendar days from receipt of such letter to prepare a response in writing. In the event no response is received, it shall be assumed that Contractor waives any right to those sums in dispute. In the event Contractor does respond in the specified timeframe, Contractor and Client shall meet and confer in an attempt to resolve the dispute. In the event the dispute cannot be resolved, Client and Contractor shall be bound by the provisions of Paragraph 20.

4. **Late Fees**

   Late payments by Client shall be subject to late penalty fees of 1% per month from the due date until the amount is paid.

5. **Materials**

   Contractor will furnish all materials and equipment used to provide the services required by this Agreement.

6. **Term of Agreement**

   This Agreement will become effective when signed by both parties. This Agreement shall remain in effect for one (1) year from the effective date and will be renewed automatically each year thereafter unless notification is provided to the other party, as provided in Paragraph 7.

Contractor Initials _AJ_

7. **Terminating the Agreement**

Notwithstanding the foregoing, either party may terminate with or without cause by providing at least thirty (30) days written notice to the other party. Either party may terminate this Agreement "for cause" upon ten (10) days written notice. Cause includes:

- Material violation of this Agreement
- Nonpayment of Contractor's compensation after twenty (20) days written demand for payment
- Bankruptcy or insolvency of Contractor
- Sale of business by Contractor
- Death of Contractor

Contractor shall be entitled to full payment for services performed prior to the effective date of termination for those items not in dispute.

8. **Independent Contractor Status**

It is the express intention of the parties that Contractor is an independent contractor, and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor.

9. **Independent Contractor's Control**

Contractor shall determine the time, place, methods, details and means of performing the services contemplated by this Agreement. Client agrees to furnish access to any facilities or personnel necessary to facilitate Contractor's completion of the services, but Contractor shall be responsible for providing the tools, know-how and instrumentalities used in the project, including, but not limited to, such matters as:

- Education and training
- License
- Contractor's working hours
- Tools and equipment
- Work location

10. **Independent Contractor's Employees**

- Contractor shall furnish at his/her own discretion, selection, and expense, any labor required incidental to the performance of the services herein.
- Contractor shall be solely responsible for the direction and control of the employees and agents of Contractor, if any, performing services herein, including selection, hiring, firing, supervision, assignment, direction, and the setting of wages, hours and working conditions. Contractor agrees to defend, indemnify

Contractor Initials

and hold harmless Client from any and all claims brought by individuals selected
by Contractor to perform services.

- Contractor assumes full and sole responsibility for the payment of wages and
  benefits to his/her employees, if any, and for all state and federal tax
  withholdings, unemployment insurance, social security taxes and workers'
  compensation coverage. Contractor shall defend, indemnify and hold harmless
  Client from any and all liability Client may incur by Contractor's failure to
  comply with the Section.

## 11. Additional Covenants and Responsibilities of Contractor

- Contractor and Contractor's employees or subcontractors understand and agree
  that they are not required to devote their full time to performing the services
  requited by this Agreement.
- Contractor is solely responsible for : (a) the payment of all federal, state and local
  taxes and all appropriate deductions or withholdings; (b) the payment and
  provision of any unemployment insurance, state disability benefits, workers'
  compensation benefits, vacation pay, salary or hourly compensation, holiday pay,
  health, medical, dental or group insurance benefits, or any pension or profit
  sharing.
- Obtaining any applicable business or other commercial licenses;

## 12. Waiver of Benefits

Contractor agrees and certifies that he/she understands that as an independent contractor,
he/she is not entitled to participate in any benefit plans, programs, or policies maintained
by Client for the Benefit of its employees, whether currently in effect or adopted in the
future. If Contractor is determined by a court of competent jurisdiction of any state or
federal agency to be common-law employee of Client for federal or state employment
tax purposes or for any other purposes under applicable local, state or federal law,
Contractor agrees and certifies:

- That while he/she may have a right to participate in such benefit plans,
  Contractor specifically and voluntarily waives, in connection with his/her
  acceptance of the Agreement, the right to participate in such plans on an
  irrevocable basis.

## 13. Local, State and Federal Taxes

Contractor agrees that Contractor is solely responsible for the payment of all federal,
state and local taxes. Client will not:

- Withhold FICA from Contractor's payments or make FICA payments on
  Contractor's behalf
- Make state or Federal income tax from Contractor's payments

Contractor Initials _A.J._

The charges include here do not include taxes. If Contractor is required to pay any federal, state or local sales, use, property or value added taxes based on the services provided under this Agreement, the taxes shall be separately billed to Client. Contractor shall not pay any interest or penalties incurred due to late payment or nonpayment of any taxes by Client.

14. **Confidential and Proprietary Information and Materials**

During and after the term of this Agreement, Contractor agrees to: (a) maintain as strictly confidential, and (b) not to use for the benefit of contractor or any third party, any information obtained from Client or developed in the course of Contractor's services under this Agreement, which information is of a confidential, private of proprietary nature and was not previously known to Contractor or publicly available prior to disclosure of such information to Contractor by Client, or prior to development of such information under this Agreement ("Confidential Information"). Such information includes, but is not limited to, customer lists, prospect lists, pricing strategies, operational techniques and production techniques. This obligation will cease only when such information becomes publicly available through publication by Client or rightful publication by others.

Upon termination of this Agreement, Contractor agrees to transfer and return to Client any materials containing Confidential Information, including all copies, in Contractor's possession.

The Contractor shall not use Confidential Information for any purpose other than for the benefit of the Client.

15. **Non-Solicitation**

During the term of this agreement and for a year thereafter, the Contractor on its own behalf or in the service or on behalf of others shall not induce or attempt to induce any officer, director, or employee or contractor to leave Client's employ.

16. **Quality Standards**

All services provided by Contractor under this Agreement must be satisfactory in the reasonable opinion of Client.

17. **Exclusive Agreement**

This is the entire Agreement between Contractor and Client. This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to rendering of services by Contractor for Client.

18. **Modifying the Agreement**

The Agreement may be modified only by a writing signed by both parties.

Contractor Initials _____

19. **Waiver**

No waiver of any item, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement.

20. **Resolving Disputes**

If a dispute arises under this Agreement, the parties agree to first try to resolve the dispute with the help of a mutually agreed-upon mediator in Los Angeles County. Any costs and fees other than attorney fees associated with the mediation shall be shared equally by the parties. If it proves impossible to arrive at a mutually satisfactory solution through mediation, the parties agree to submit the dispute to arbitration pursuant to the American Arbitration Association's Commercial Dispute Rules. The arbitration shall take place in Los Angeles County. Judgment upon the awarded rendered by the arbitrator may be entered in any court having jurisdiction to do so. Cost of arbitration, including attorney fees, will be allocated by the arbitrator.

21. **Limited Liability**

Contractor shall indemnify and hold Client harmless against any and all losses, damages, costs, expenses or attorney's fees resulting from or in any way arising out of breach of any warranty, covenant or agreement by Contractor under this Agreement. Contractor will further indemnify and hold Client harmless against any and all losses, damages, costs, expense or attorney's fees resulting from work undertaken pursuant to this Agreement. Contractor agrees to furnish upon request of Client a certificate of insurance evidence purchase of general liability insurance with limits of no less than $1,000,000 per occurrence and $1,000,000 in the aggregate.

22. **Notices**

All notices and other communications in connection with this Agreement shall be in writing and shall be considered given as follows:

- When delivered personally to the recipient's address as stated on this Agreement
- Three days after being deposited in the United States mail, with postage prepaid to the recipient's address as stated on this Agreement; or
- When sent by fax to the last fax number of the recipient known to the person giving notice, such notice is effective upon receipt provided that a duplicate copy of the notice is promptly given by first class mail, or the recipient delivers a written confirmation of receipt.

Contractor Initials

23. No Partnership

This Agreement does not create a partnership relationship. Neither Party has authority to enter into contracts on the other's behalf.

24. **Applicable Law**

The Agreement will be governed by the laws of the State of California.

25. **Severability**

The validity or un-enforceability of one or more provisions of the Agreement shall not affect the validity or enforceability of any of the other provisions hereof and this Agreement shall be construed in all respects as if such invalid and un-enforceable provisions were omitted.

26. **No Assignment**

Neither Contractor nor Client may assign their rights nor delegate their duties under this Agreement.

**Signatures**

Client:

Destinations to Recovery LLC

x _____

Daniel Samson, President

Date: _____

Contractor:

Atoosa Javaheri, Psy.D.

x _____

Atoosa Javaheri, Psy.D.

Date: 7-23-24

Contractor Initials _____

Page 6 of 7

## EXHIBIT A

1. **Contractor's Fees and Services to be Performed Under Contract**

Effective Tentative Date: June 1, 2024

Preferred Professional Consultant Service Fee:
   $215.00 per hour for recovery group session, up to 6 hrs, these hours include documentation time.

Contractor agrees to perform the following service(s) listed below:
   In person recovery group session(s).

**Duties and Responsibilities:**

- Conducts up to three (3) SMART recovery groups.
- Each recovery session must be up to but not limited to up to 6 (six) hours.
- Recovery group locations are at company's residential homes at Ladrillo and Hatteras.
- Manages a case load to encourage improvement of client's health, self and personal cares.
- For the best interest of clients, the contractor fosters independence and thrives a positive environment.
- Plans, guides and manages group meeting(s) to meet client's goals and group/individual solve problem(s).
- Provides an ongoing client(s) treatment to coordinate a positive life skills training, and pro social cognitive behavioral change.
- Must document each session as soon as the session is ended thru Company's KIPU system.
- Maintains and provides written reports of each consultation visit including data and hours, observation, comments, goals and/or recommendations, and staff conferences.

### Signatures

**Client:**                                          **Contractor:**

Destinations to Recovery LLC                         Atoosa Javaheri, Psy.D.

x _____                            x _____

Daniel Samson, President                             Atoosa Javaheri, Psy.D.

Date: _____                        Date: 7-23-24

Contractor Initials _____

# EXHIBIT B

## AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is made by and between Destinations to Recovery LLC ("Client"), with a principal place of business at 21051 Warner Center Lane, Suite 220 Woodland Hills CA 91367, on the one hand, and Olga Avedissian ("Contractor"), with a principal place of business at ___22 A Paloma Ave Venice CA 90291___ *(address)* in the other hand, with reference to the following:

1. **Services to be Performed**

   Contractor agrees to perform the services described in Exhibit "A", which is attached to and made part of this Agreement, and such other tasks as may be agreed to between Client and Contractor.

2. **Compensation**

   In consideration for the services to be performed by Contractor, Client agrees to pay Contractor at various rates the exact amounts identified in Exhibit "A."

3. **Terms of Payment**

   Contractor shall send Client an invoice monthly. Client shall pay Contractor within thirty (30) calendar days from the date of the receipt of each invoice assuming there is no dispute as the amount owed. In the event of such a dispute, Client shall pay to Contractor those sums as to which there is no dispute and shall provide a letter identifying areas of disagreement with this thirty (30) day period. Contractor will have ten (10) calendar days from receipt of such letter to prepare a response in writing. In the event no response is received, it shall be assumed that Contractor waives any right to those sums in dispute. In the event Contractor does respond in the specified timeframe, Contractor and Client shall meet and confer in an attempt to resolve the dispute. In the event the dispute cannot be resolved, Client and Contractor shall be bound by the provisions of Paragraph 20.

4. **Late Fees**

   Late payments by Client shall be subject to late penalty fees of 1% per month from the due date until the amount is paid.

5. **Materials**

   Contractor will furnish all materials and equipment used to provide the services required by this Agreement.

Contractor Initials ___O. A.___

6. **Term of Agreement**

This Agreement will become effective when signed by both parties and will terminate on the earlier of:

- One (1) year from the date that this contract is signed by both parties; or
- The date a party terminates the Agreement as provided in Paragraph 8.

7. **Terminating the Agreement**

For "cause," either party may terminate this Agreement upon ten (10) days written notice. "Cause" includes:

- Material violation of this Agreement
- Nonpayment of Contractor's compensation after twenty (20) days written demand for payment
- Bankruptcy or insolvency of Contractor
- Sale of business by Contractor
- Death of Contractor

Contractor shall be entitled to full payment for services performed prior to the effective date of termination for those items not in dispute.

Either party may terminate this agreement with thirty (30) days notice.

8. **Independent Contractor Status**

It is the express intention of the parties that Contractor is an independent contractor, and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor.

9. **Independent Contractor's Control**

Contractor shall determine the time, place, methods, details and means of performing the services contemplated by this Agreement. Client agrees to furnish access to any facilities or personnel necessary to facilitate Contractor's completion of the services, but Contractor shall be responsible for providing the tools, know-how and instrumentalities used in the project, including, but not limited to, such matters as:

- Education and training
- License
- Contractor's working hours
- Tools and equipment
- Work location

10. **Independent Contractor's Employees**

- Contractor shall furnish at his/her own discretion, selection, and expense, any labor required incidental to the performance of the services herein.
- Contractor shall be solely responsible for the direction and control of the employees and agents of Contractor, if any, performing services herein, including selection, hiring, firing, supervision, assignment, direction, and the setting of wages, hours and working conditions. Contractor agrees to defend, indemnify and hold harmless Client from any and all claims brought by individuals selected by Contractor to perform services.
- Contractor assumes full and sole responsibility for the payment of wages and benefits to his/her employees, if any, and for all state and federal tax withholdings, unemployment insurance, social security taxes and workers' compensation coverage. Contractor shall defend, indemnify and hold harmless Client from any and all liability Client may incur by Contractor's failure to comply with the Section.

11. **Additional Covenants and Responsibilities of Contractor**

- Contractor and Contractor's employees or subcontractors understand and agree that they are not required to devote their full time to performing the services requited by this Agreement.
- Contractor is solely responsible for : (a) the payment of all federal, state and local taxes and all appropriate deductions or withholdings; (b) the payment and provision of any unemployment insurance, state disability benefits, workers' compensation benefits, vacation pay, salary or hourly compensation, holiday pay, health, medical, dental or group insurance benefits, or any pension or profit sharing.
- Obtaining any applicable business or other commercial licenses;

12. **Waiver of Benefits**

Contractor agrees and certifies that he/she understands that as an independent contractor, he/she is not entitled to participate in any benefit plans, programs, or policies maintained by Client for the Benefit of its employees, whether currently in effect or adopted in the future. If Contractor is determined by a court of competent jurisdiction of any state or federal agency to be common-law employee of Client for federal or state employment tax purposes or for any other purposes under applicable local, state or federal law, Contractor agrees and certifies:

Contractor Initials ___O. A.___                                          Page **3** of **7**

- That while he/she may have a right to participate in such benefit plans, Contractor specifically and voluntarily waives, in connection with his/her acceptance of the Agreement, the right to participate in such plans on an irrevocable basis.

### 13. **Local, State and Federal Taxes**

Contractor agrees that Contractor is solely responsible for the payment of all federal, state and local taxes.  Client will not:

- Withhold FICA from Contractor's payments or make FICA payments on Contractor's behalf
- Make state or Federal income tax from Contractor's payments

The charges include here do not include taxes. If Contractor is required to pay any federal, state or local sales, use, property or value added taxes based on the services provided under this Agreement, the taxes shall be separately billed to Client. Contractor shall not pay any interest or penalties incurred due to late payment or nonpayment of any taxes by Client.

### 14. **Confidential and Proprietary Information and Materials**

During and after the term of this Agreement, Contractor agrees to: (a) maintain as strictly confidential, and (b) not to use for the benefit of contractor or any third party, any information obtained from Client or developed in the course of Contractor's services under this Agreement, which information is of a confidential, private of proprietary nature and was not previously known to Contractor or publicly available prior to disclosure of such information to Contractor by Client, or prior to development of such information under this Agreement ("Confidential Information"). Such information includes, but is not limited to, customer lists, prospect lists, pricing strategies, operational techniques and production techniques. This obligation will cease only when such information becomes publicly available through publication by Client or rightful publication by others.

Upon termination of this Agreement, Contractor agrees to transfer and return to Client any materials containing Confidential Information, including all copies, in Contractor's possession.

The Contractor shall not use Confidential Information for any purpose other than for the benefit of the Client.

15. **Quality Standards**

All services provided by Contractor under this Agreement must be satisfactory in the reasonable opinion of Client.

16. **Exclusive Agreement**

This is the entire Agreement between Contractor and Client. This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to rendering of services by Contractor for Client.

17. **Modifying the Agreement**

The Agreement may be modified only by a writing signed by both parties.

18. **Waiver**

No waiver of any item, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement.

19. **Resolving Disputes**

If a dispute arises under this Agreement, the parties agree to first try to resolve the dispute with the help of a mutually agreed-upon mediator in Los Angeles County.  Any costs and fees other than attorney fees associated with the mediation shall be shared equally by the parties. If it proves impossible to arrive at a mutually satisfactory solution through mediation, the parties agree to submit the dispute to arbitration pursuant to the American Arbitration Association's Commercial Dispute Rules.  The arbitration shall take place in Los Angeles County. Judgment upon the awarded rendered by the arbitrator may be entered in any court having jurisdiction to do so.  Cost of arbitration, including attorney fees, will be allocation by the arbitrator.

20. **Limited Liability**

Contractor shall indemnify and hold Client harmless against any and all losses, damages, costs, expenses or attorney's fees resulting from or in any way arising out of breach of any warranty, covenant or agreement by Contractor under this Agreement. Contractor will further indemnify and hold Client harmless against any and all losses, damages, costs, expense or attorney's fees resulting from work undertaken pursuant to this Agreement. Contractor agrees to furnish upon request of Client a certificate of insurance evidence purchase of general liability insurance with limits of no less than $500,000 per occurrence and $1,000,000 in the aggregate.

Contractor Initials _O. A._

21. **Notices**

All notices and other communications in connection with this Agreement shall be in writing and shall be considered given as follows:

- When delivered personally to the recipient's address as stated on this Agreement
- Three days after being deposited in the United States mail, with postage prepaid to the recipient's address as stated on this Agreement; or
- When sent by fax to the last fax number of the recipient known to the person giving notice, such notice is effective upon receipt provided that a duplicate copy of the notice is promptly given by first class mail, or the recipient delivers a written confirmation of receipt.

22. **No Partnership**

This Agreement does not create a partnership relationship. Neither Party has authority to enter into contracts on the other's behalf.

23. **Applicable Law**

The Agreement will be governed by the laws of the State of California.

24. **Severability**

The validity or un-enforceability of one or more provisions of the Agreement shall not affect the validity or enforceability of any of the other provisions hereof and this Agreement shall be construed in all respects as if such invalid and un-enforceable provisions were omitted.

25. **No Assignment**

Neither Contractor nor Client may assign their rights nor delegate their duties under this Agreement.

**Signatures**

**Client:**

Destinations to Recovery LLC

**Contractor:**

Olga Avedissian

X_____

Daniel Samson, President

X_____

Olga Avedissian

Contractor Initials ___O. A.___

## EXHIBIT A

1. **Contractor's Fees and Services to be Performed Under Contract**

   Fitness Istructor Service Fee:                $70.00/hour

   Contractor agrees to perform the following services listed below:

# EXHIBIT C

## AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is made by and between Destinations to Recovery LLC ("Client"), with a principal place of business at 20951 Burbank Blvd Suite D Woodland Hills CA 91367, on the one hand, and Jason D. Hennick, LCSW ("Contractor"), with a principal place of business at *6368 Mt. ackerman Drive SDCA92111* *(Contractor address)* in the other hand, with reference to the following:

1. **Services to be Performed**

   Contractor agrees to perform the services described in Exhibit "A", which is attached to and made part of this Agreement, and such other tasks as may be agreed to between Client and Contractor.

2. **Compensation**

   In consideration for the services performed by Contractor, Client agrees to pay Contractor at various rates the exact amounts identified in Exhibit "A."

3. **Terms of Payment**

   Contractor shall send Client an invoice monthly. Client shall pay Contractor within thirty (30) calendar days from the date of the receipt of each invoice assuming there is no dispute as the amount owed. In the event of such a dispute, Client shall pay to Contractor those sums as to which there is no dispute and shall provide a letter identifying areas of disagreement with this thirty (30) day period. Contractor will have ten (10) calendar days from receipt of such letter to prepare a response in writing. In the event no response is received, it shall be assumed that Contractor waives any right to those sums in dispute. In the event Contractor does respond in the specified timeframe, Contractor and Client shall meet and confer in an attempt to resolve the dispute. In the event the dispute cannot be resolved, Client and Contractor shall be bound by the provisions of Paragraph 20.

4. **Late Fees**

   Late payments by Client shall be subject to late penalty fees of 1% per month from the due date until the amount is paid.

5. **Materials**

   Contractor will furnish all materials and equipment used to provide the services required by this Agreement.

6. **Term of Agreement**
   This Agreement will become effective when signed by both parties. This Agreement shall remain in effect for one (1) year from the effective date and will be renewed automatically each year thereafter unless notification is provided to the other party, as provided in Paragraph 7.

7. **Terminating the Agreement**

Notwithstanding the foregoing, either party may terminate with or without cause by providing at least thirty (30) days written notice to the other party. Either party may terminate this Agreement "for cause" upon ten (10) days written notice. Cause includes:

- Material violation of this Agreement
- Nonpayment of Contractor's compensation after twenty (20) days written demand for payment
- Bankruptcy or insolvency of Contractor
- Sale of business by Contractor
- Death of Contractor

Contractor shall be entitled to full payment for services performed prior to the effective date of termination for those items not in dispute.

8. **Independent Contractor Status**

It is the express intention of the parties that Contractor is an independent contractor, and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor.

9. **Independent Contractor's Control**

Contractor shall determine the time, place, methods, details and means of performing the services contemplated by this Agreement. Client agrees to furnish access to any facilities or personnel necessary to facilitate Contractor's completion of the services, but Contractor shall be responsible for providing the tools, know-how and instrumentalities used in the project, including, but not limited to, such matters as:

- Education and training
- License
- Contractor's working hours
- Tools and equipment
- Work location

10. **Independent Contractor's Employees**

- Contractor shall furnish at his/her own discretion, selection, and expense, any labor required incidental to the performance of the services herein.
- Contractor shall be solely responsible for the direction and control of the employees and agents of Contractor, if any, performing services herein, including selection, hiring, firing, supervision, assignment, direction, and the setting of wages, hours and working conditions. Contractor agrees to defend, indemnify

and hold harmless Client from any and all claims brought by individuals selected by Contractor to perform services.

- Contractor assumes full and sole responsibility for the payment of wages and benefits to his/her employees, if any, and for all state and federal tax withholdings, unemployment insurance, social security taxes and workers' compensation coverage.  Contractor shall defend, indemnify and hold harmless Client from any and all liability Client may incur by Contractor's failure to comply with the Section.

11. **Additional Covenants and Responsibilities of Contractor**
- Contractor and Contractor's employees or subcontractors understand and agree that they are not required to devote their full time to performing the services requited by this Agreement.
- Contractor is solely responsible for : (a) the payment of all federal, state and local taxes and all appropriate deductions or withholdings; (b) the payment and provision of any unemployment insurance, state disability benefits, workers' compensation benefits, vacation pay, salary or hourly compensation, holiday pay, health, medical, dental or group insurance benefits, or any pension or profit sharing.
- Obtaining any applicable business or other commercial licenses;

12. **Waiver of Benefits**

Contractor agrees and certifies that he/she understands that as an independent contractor, he/she is not entitled to participate in any benefit plans, programs, or policies maintained by Client for the Benefit of its employees, whether currently in effect or adopted in the future. If Contractor is determined by a court of competent jurisdiction of any state or federal agency to be common-law employee of Client for federal or state employment tax purposes or for any other purposes under applicable local, state or federal law, Contractor agrees and certifies:

- That while he/she may have a right to participate in such benefit plans, Contractor specifically and voluntarily waives, in connection with his/her acceptance of the Agreement, the right to participate in such plans on an irrevocable basis.

13. **Local, State and Federal Taxes**

Contractor agrees that Contractor is solely responsible for the payment of all federal, state and local taxes.  Client will not:

- Withhold FICA from Contractor's payments or make FICA payments on Contractor's behalf
- Make state or Federal income tax from Contractor's payments

The charges include here do not include taxes. If Contractor is required to pay any federal, state or local sales, use, property or value added taxes based on the services provided under this Agreement, the taxes shall be separately billed to Client. Contractor shall not pay any interest or penalties incurred due to late payment or nonpayment of any taxes by Client.

### 14. Confidential and Proprietary Information and Materials

During and after the term of this Agreement, Contractor agrees to: (a) maintain as strictly confidential, and (b) not to use for the benefit of contractor or any third party, any information obtained from Client or developed in the course of Contractor's services under this Agreement, which information is of a confidential, private of proprietary nature and was not previously known to Contractor or publicly available prior to disclosure of such information to Contractor by Client, or prior to development of such information under this Agreement ("Confidential Information"). Such information includes, but is not limited to, customer lists, prospect lists, pricing strategies, operational techniques and production techniques. This obligation will cease only when such information becomes publicly available through publication by Client or rightful publication by others.

Upon termination of this Agreement, Contractor agrees to transfer and return to Client any materials containing Confidential Information, including all copies, in Contractor's possession.

The Contractor shall not use Confidential Information for any purpose other than for the benefit of the Client.

### 15. Non-Solicitation

During the term of this agreement and for a year thereafter, the Contractor on its own behalf or in the service or on behalf of others shall not induce or attempt to induce any officer, director, or employee or contractor to leave Client's employ.

### 16. Quality Standards

All services provided by Contractor under this Agreement must be satisfactory in the reasonable opinion of Client.

### 17. Exclusive Agreement

This is the entire Agreement between Contractor and Client. This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to rendering of services by Contractor for Client.

### 18. Modifying the Agreement

The Agreement may be modified only by a writing signed by both parties.

Contractor Initials _____

19. **Waiver**

No waiver of any item, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement.

20. **Resolving Disputes**

If a dispute arises under this Agreement, the parties agree to first try to resolve the dispute with the help of a mutually agreed-upon mediator in Los Angeles County. Any costs and fees other than attorney fees associated with the mediation shall be shared equally by the parties. If it proves impossible to arrive at a mutually satisfactory solution through mediation, the parties agree to submit the dispute to arbitration pursuant to the American Arbitration Association's Commercial Dispute Rules. The arbitration shall take place in Los Angeles County. Judgment upon the awarded rendered by the arbitrator may be entered in any court having jurisdiction to do so. Cost of arbitration, including attorney fees, will be allocated by the arbitrator.

21. **Limited Liability**

Contractor shall indemnify and hold Client harmless against any and all losses, damages, costs, expenses or attorney's fees resulting from or in any way arising out of breach of any warranty, covenant or agreement by Contractor under this Agreement. Contractor will further indemnify and hold Client harmless against any and all losses, damages, costs, expense or attorney's fees resulting from work undertaken pursuant to this Agreement. Contractor agrees to furnish upon request of Client a certificate of insurance evidence purchase of general liability insurance with limits of no less than $1,000,000 per occurrence and $1,000,000 in the aggregate.

22. **Notices**

All notices and other communications in connection with this Agreement shall be in writing and shall be considered given as follows:

- When delivered personally to the recipient's address as stated on this Agreement
- Three days after being deposited in the United States mail, with postage prepaid to the recipient's address as stated on this Agreement; or
- When sent by fax to the last fax number of the recipient known to the person giving notice, such notice is effective upon receipt provided that a duplicate copy of the notice is promptly given by first class mail, or the recipient delivers a written confirmation of receipt.

23. **No Partnership**

This Agreement does not create a partnership relationship. Neither Party has authority to enter into contracts on the other's behalf.

24. **Applicable Law**

The Agreement will be governed by the laws of the State of California.

25. **Severability**

The validity or un-enforceability of one or more provisions of the Agreement shall not affect the validity or enforceability of any of the other provisions hereof and this Agreement shall be construed in all respects as if such invalid and un-enforceable provisions were omitted.

26. **No Assignment**

Neither Contractor nor Client may assign their rights nor delegate their duties under this Agreement.

**Signatures**

**Client:**                                                    **Contractor:**

Destinations to Recovery LLC                   Jason D. Hennick, LCSW

x _____                        x _____

Daniel Samson, President                         Jason D. Hennick, LCSW

Date: _10/13/2022_____                          Date: ___OCT 1 3 2022___

## EXHIBIT A

**Contractor's service fees to be performed under contract:**

Effective Date: November 1, 2022

Preferred Professional Consultant Service Fee:
    $150.00 per hour for group supervision maximum on 2 hours session per week

If group supervision is not available, the following service fee schedule applies per individual supervision:
    $125.00 per hour for individual supervision of 1 hour session per week; additional hour of supervision per week must be <u>pre-approved</u> by Sr. Clinical Management with cap of 2 hours per week.

Contractor agrees to perform the following service(s) listed below:
    *Once a week clinical supervision as required for Associate Therapist(s).*

**<u>Signatures</u>**

Client:

Destinations to Recovery LLC

x _____

Daniel Samson, President

Date: ___10/13/2022___

Contractor:

<u>Jason D. Hennick, LCSW</u>

x _____

<u>Jason D. Hennick, LCSW</u>

Date: ___OCT 1 3 2022___

Contractor Initials _____

*Hennick*

# BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") was entered into as of the
11/1/2022 ("Commencement Date"), by and between  Destinations to Recovery, LLC ("Facility"),
located at 20951 Burbank Blvd. Suite D Woodland Hills, CA 91367 , and  Jason D. Hennick, LCSW
("Business Associate"), located at *6386 MT. Ochernan Drive SD CA 92111*(*Business Associate
Address*). The Facility is referred to below as "CE."  The Business Associate is referred to below as
"BA."

## RECITALS

A.      This Agreement is entered into by CE and BA for the purposes of complying with
privacy and security regulations issued by the United States Department of Health and Human
Services under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and
the Health Information Technology for Economic and Clinical Health Act ("HITECH Act").

B.      CE is a covered entity as such term is defined under HIPAA, and as such is required to
comply with the requirements thereof regarding the confidentiality and privacy of Protected
Health Information ("PHI")(defined below).

C.      BA provides services to or on behalf of CE pursuant to the terms of Professional Service
agreement, dated as of  11/1/2022, between CE and BA (the "Service Agreement"), that may
require CE to disclose individually identifiable health information to BA, some of which may
constitute Protected Health Information ("PHI")(defined below).

   **NOW THEREFORE,** in consideration of the promises and mutual agreement contained
herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby
acknowledged, the parties, intending to be legally bound, agree as set forth below.

## AGREEMENT

1.    **DEFINITIONS**

   1.1    General.  The following terms used in this Agreement shall have the same
meaning as those terms in the HIPAA Rules: Breach, Designated Record Set, Disclosure,
electronic Protected Health Information ("ePHI"), Health Care Operations, Individual, Minimum
Necessary, Notice of Privacy Practices, Protected Health Information ("PHI"), Required By
Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and
Use.

   1.2    Specific Definitions.

      1.2.1    Business Associate. "Business Associate" shall have the meaning given to
such term under HIPAA, including but not limited to, 45 C.F.R. § 160.103.

1.2.2    <u>Covered Entity</u>. "Covered Entity" shall have the meaning given to such term under HIPAA, including but not limited to, 45 C.F.R. § 160.103.

1.2.3    <u>HIPAA</u>. "HIPAA" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 C.F.R. Parts 160 and 164.

1.2.4    <u>Privacy Rule</u>. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E.

1.2.5    <u>Security Rule</u>. "Security Rule" shall mean the Security Standards for the Protection of Electronic Protected Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and C.

## 2.    **OBLIGATIONS OF BUSINESS ASSOCIATE**

2.1    <u>Permitted Uses and Disclosures of PHI</u>. BA, its directors, officers, Subcontractors, employees, affiliates, agents, and representatives shall use or disclose PHI only (a) in connection with fulfilling its duties and obligations under this Agreement and the Service Agreement; (b) for the proper management and administration of BA; or (c) to carry out the legal responsibilities of BA.

2.2    <u>Prohibited Uses and Disclosures of PHI</u>. BA shall not use or disclose PHI other than as permitted or Required By Law. BA shall not use or disclose PHI in any manner that violates state or federal laws, or would violate such laws if used or disclosed in such manner by CE.

2.3    <u>Third Party Disclosures</u>. BA shall obtain and maintain an agreement with each Subcontractor that has or will have access to PHI which is received from, created, or received by BA on behalf of CE, pursuant to which agreement such Subcontractor agrees to be bound by the same restrictions, terms, and conditions that apply to BA pursuant to this Agreement with respect to such PHI. BA shall also (a) obtain reasonable assurances from the Subcontractor that the PHI will be held in confidence and used or further disclosed only as Required by Law or for the purpose for which it was disclosed, and (b) obligate such person to notify BA of any instance in which PHI is used or disclosed that is not provided for in the Service Agreement, including incidents that constitute breaches of unsecured PHI or any security incident of which it becomes aware in which the confidentiality of the PHI has been breached.

2.4    <u>Minimum Necessary</u>. BA and its agents or Subcontractors shall request, use and disclose only the minimum amount of PHI necessary to accomplish the purpose of the request, use or disclosure. To the extent BA uses or discloses PHI received from, created, or received by BA on behalf of CE, BA will make reasonable efforts to limit PHI to the Minimum Necessary to accomplish the intended purpose of the use, disclosure or request.

2.5    <u>Access of Individuals to PHI</u>.

2.5.1    BA shall make PHI maintained by BA or its agents or Subcontractors available to CE for inspection and copying within five (5) business days of a written request by CE to enable CE to fulfill its obligations under the Privacy Rule. If BA maintains ePHI, BA shall provide such information in electronic format to enable CE to fulfill its obligations under 45 C.F.R. § 164.524.

2.5.2    In the event an Individual or entity requests access to PHI from BA, BA shall forward such request to CE within two (2) business days. CE is responsible for determining what PHI shall be unavailable to the Individual pursuant to 45 C.F.R. § 164.524.

2.5.3    Any denial of access to PHI determined by CE pursuant to 45 C.F.R. § 164.524, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals, and/or complaints arising from denials.

2.5.4    BA shall cooperate with CE in a manner that enables CE to meet its obligations under 45 C.F.R § 164.524.

2.6    Amendment of PHI.

2.6.1    In order to allow CE to respond to a request by an Individual for an amendment pursuant to 45 C.F.R. § 164.526, BA shall, within five (5) business days of a written request by CE for PHI about an Individual contained in a Designated Record Set, make such PHI available to CE for so long as such information is maintained in the Designated Record Set.

2.6.2    In the event that any Individual requests that the BA amend his/her PHI, BA shall forward such request to CE within two (2) business days. The CE is responsible for determining what PHI is unavailable to the Individual pursuant to 45 C.F.R. § 164.526.

2.6.3    Any denial of an amendment to PHI determined by CE pursuant to 45 C.F.R. § 164.526, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals and/or complaints arising from denials.

2.6.4    BA shall cooperate with CE in a manner that enables CE to meet its obligations under 45 C.F.R. § 164.526.

2.6.5    Within ten (10) business days of receipt of a request from CE to amend an Individual's PHI in a Designated Record Set, BA shall incorporate any amendments, statements of disagreement, and/or rebuttals approved by CE into its Designated Record Set, as required by 45 C.F.R. § 164.526.

2.7    Accounting of Disclosures.

2.7.1    In order to allow CE to respond to a request by an Individual for an accounting of disclosures of a Designated Record Set pursuant to 45 C.F.R. § 164.528, BA shall, within five (5) business days of a CE's written request for an accounting of disclosures of PHI about an Individual, make such information available to CE. At a minimum, BA shall provide

CE with the following information: (a) the date of the disclosure; (b) the name of the entity or person who received the PHI, and, if known, the address of such entity or person; (c) a brief description of the PHI disclosed; and (d) a brief statement of the purpose of such disclosure.

2.7.2    In the event an Individual requests an accounting of disclosures of PHI directly from BA, BA shall forward such request to CE within two (2) business days.

2.7.3    BA shall implement an appropriate recordkeeping process to enable it to comply with the requirements of 45 C.F.R. § 164.528.

2.7.4    BA shall cooperate with CE in a manner that enables CE to meet its obligations under 45 C.F.R. § 164.528.

2.8    Subpoena or Legal Request for PHI. BA shall notify CE within two (2) business days of receipt of any request, subpoena, or other legal process to obtain PHI received from, or created or received by BA on behalf of CE. CE, in conjunction with BA, shall determine whether BA may disclose PHI pursuant to such request, subpoena, or other legal process. BA agrees to comply with CE's determination in such instances. BA agrees to cooperate fully with CE in any legal challenge initiated by CE in response to such request, subpoena, or other legal process.  The provisions of this Section shall survive the termination of this Agreement.

2.9    Reporting Breaches, Improper Disclosures, and Security Incidents.

2.9.1    Breaches. In the event of a Breach of any Unsecured PHI that BA accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds or uses on behalf of CE, BA shall report such Breach to CE immediately, but in no event more than five (5) days after discovering the breach. Notice of a Breach shall include, at a minimum: (a) the identification of each Individual whose PHI has been, or is reasonably believed to have been accessed, acquired or disclosed during or as a result of the Breach; (b) the date of the Breach, if known; (c) the scope of the Breach; and (d) a description of the BA's response to the Breach. BA shall, in consultation with CE, mitigate, to the extent practicable any harmful effect of such Breach that is known to the BA.

2.9.2    Improper Disclosures. BA shall report any unauthorized or improper use or disclosure of PHI regarding the terms and conditions of this Agreement or applicable federal and state laws to CE as soon as practicable, but in no event later than five (5) business days of the date on which BA becomes aware of such unauthorized or improper use or disclosure. BA shall, in consultation with CE, mitigate to the extent practicable any harmful effect of such improper disclosures.

2.9.3    Security Incidents. BA shall report to CE any Security Incident of which it becomes aware within five (5) business days.

2.10    Safeguards.

2.10.1  BA shall employ appropriate administrative, technical, and physical safeguards, consistent with the size and complexity of BA's operations, to protect the confidentiality and security of PHI that it creates, receives, maintains, or transmits on behalf of CE and to prevent the use or disclosure of PHI in any manner inconsistent with the terms of this Agreement.

2.10.2  BA shall implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the ePHI that it creates, receives, maintains, or transmits on behalf of CE. Such safeguards shall include implementing written policies and procedures in compliance with HIPAA and the HITECH Act, conducting a security risk assessment, and training BA employees who will have access to PHI on BA's policies and procedures as required by HIPAA and the HITECH Act.

2.10.3  BA shall provide CE with a copy of written policies, procedures, and other information about its security program upon request.

2.10.4  Subject to the conditions set forth in Section 2.11 of this Agreement, CE shall have the right to audit BA's compliance with its security program and the terms of this Agreement. BA shall cooperate in such audits and shall provide copies of any documents requested by CE in the most efficient manner possible.

2.11  Availability of Books and Records to CE. Within ten (10) calendar days of a written request by CE, BA and its agents or Subcontractors shall permit CE to audit BA's internal practices, books, and records at reasonable times as they pertain to the use and disclosure of PHI received from, or created or received by BA on behalf of CE in order to ensure that CE and BA are in compliance with the requirements of this Agreement, and to the extent that CE determines such examination is necessary to comply with CE's obligations pursuant to HIPAA. The availability of books and records from BA to CE is subject to the following conditions:

(i)     BA and CE shall mutually agree in advance upon the scope, timing, and location of such an inspection.

(ii)    CE shall protect the confidentiality of all confidential and proprietary information of BA to which CE has access during the course of inspection.

(iii)   CE shall execute a nondisclosure agreement, under terms mutually agreed upon by the parties, if requested by BA.

The fact that CE inspects, or fails to inspect, or has the right to inspect BA's facilities, systems, books, records, agreements, policies or procedures, does not relieve BA of its responsibility to comply with this Agreement, nor does CE's (i) failure to detect, or (ii) detection, but failure to notify BA or require BA's remediation of any unsatisfactory practices, constitute acceptance of such practice or constitute a waiver of CE's rights under the Services Agreement or this Agreement.

2.12    <u>Governmental Access to Records</u>.  BA shall make its internal practices, books, and records relating to the use and disclosure of PHI available to the Secretary for purposes of determining BA's compliance with the Privacy Rule and the Security Rule. BA shall notify CE within ten (10) calendar days of learning that BA has become the subject of an audit, compliance review, or complaint investigation by the Secretary. BA shall provide to CE a copy of such request for information and a copy of any PHI that BA provides to the Secretary concurrently with providing such PHI to the Secretary.

2.13    <u>Data Ownership of PHI</u>. BA acknowledges that, as between BA and CE, BA has no ownership rights with respect to PHI received from, created for, or used on behalf of CE.

## 3.    **OBLIGATIONS OF COVERED ENTITY**

3.1    <u>Obligations</u>. CE warrants that CE, its directors, officers, subcontractors, employees, affiliated agents, and representatives: (a) shall comply with the Privacy Rule in its use or disclosure of PHI; (b) shall not use or disclose PHI in any manner that violates applicable federal and state laws; (c) shall not request BA to use or disclose PHI in any manner that violates applicable federal and state laws if such use or disclosure were done by CE; and (d) may request BA to disclose PHI directly to another party only for the purposes allowed by the Privacy Rule.

3.2    <u>Breach</u>. CE shall provide notice to BA of any pattern of activity or practice of BA that CE believes constitutes a material breach or violation of the BA's obligation under the Service Agreement or this Agreement within five (5) calendar days of discovery and shall meet with BA to discuss and attempt to resolve the problem as one of the reasonable steps to cure the breach or end the violation.

3.3    <u>Permissible Requests by CE</u>. CE shall not request BA to use or disclose PHI in any manner that would not be permissible under HIPAA if done by CE, except as permitted pursuant to Section 2

3.4    <u>Notice of Privacy Practices</u>. Upon request from BA, CE will provide BA with a copy of its Notice of Privacy Practices.

## 4.    **TERM AND TERMINATION**

4.1    <u>Term</u>. This Agreement shall commence on the Commencement Date and shall continue, unless earlier terminated pursuant to the terms and conditions herein, until the expiration of the Service Agreement (the "Term").

4.2    <u>Material Breach</u>. A breach by BA of any provision of this Agreement, as determined by CE, shall constitute a material breach of this Agreement and shall provide grounds for immediate termination of the Service Agreement, any provision of the Service Agreement to the contrary notwithstanding.

4.2.1    Where CE has knowledge of a material breach by BA, and a cure is possible, CE shall provide BA with an opportunity to cure.  Where said breach is not cured

within ten (10) business days of BA's receipt of notice from CE of said breach, CE shall terminate the Service Agreement.

4.2.2   At the expense of BA, CE shall have the right to cure any breach of BA's obligations under this Agreement. CE shall give BA notice of its election to cure any such breach, and BA shall cooperate fully in the efforts by CE to cure BA's breach. All requests from CE to BA for payment for such services shall be paid within thirty (30) business days.

4.2.3   In the event that BA or CE has knowledge of a material breach of this Agreement by the other, and a cure is not possible, the non-breaching party shall terminate the portion of the Service Agreement that is affected by the breach. When neither cure nor termination is feasible, the non-breaching party shall report the violation to the Secretary.

4.3   Judicial or Administrative Proceeding. CE may terminate the Service Agreement, effectively immediately, if: (a) BA is named as a defendant in a criminal proceeding for a violation of HIPAA, the HITECH Act, or other privacy or security laws; or (b) a finding or stipulation that the BA has violated any standard or requirement of HIPAA, the HITECH Act, or other privacy or security laws is made in any administrative or civil proceeding in which BA has been joined.

4.4   Effect of Termination.  Upon termination of the Service Agreement for any reason, BA shall return or destroy all PHI that BA or its agents or Subcontractors still maintain in any form, and shall retain no copies of such PHI. BA shall certify in writing to CE that the PHI has been destroyed. If return or destruction is not feasible, as determined by CE, BA shall continue to extend the protections of Section 2 of this Agreement to such information, and limit further use of such PHI to those purposes that make the return or destruction of such PHI impractical.  All destruction shall be in accordance with HIPAA, the HITECH Act, and applicable state law.

5.   **INSURANCE AND INDEMNIFICATION**

5.1   Insurance. No later than one (1) month from Commencement Date of this Agreement BA shall obtain, or ensure that its existing liability insurance covers, and shall maintain during the term of this Agreement liability insurance covering claims based on a violation of the Privacy Rule or any applicable law or regulation concerning the privacy of patient information and claims based on obligations pursuant to this Agreement in an amount not less than $1,000,000 per claim.  Such insurance shall be in the form of occurrence-based coverage and shall name CE as an additional named insured. A copy of such policy or certificate evidencing the policy shall be provided to CE upon written notice.

5.2   Indemnification. BA hereby agrees to indemnify and hold CE and its employees and agents harmless from and against any and all loss, liability, or damages, including reasonable attorneys' fees, arising out of or in any manner occasioned by a breach of any provision of this Agreement by BA, its employees, agents, or Subcontractors.

6.   **MISCELLANEOUS**

6.1    Amendment. The parties agree to take such action to amend this Agreement from time to time as is necessary to comply with the requirements of HIPAA.

6.2    Notices. Any notice, demand or communication required, permitted or desired to be given hereunder shall be in writing and shall be delivered personally, by certified mail, return receipt requested, postage prepaid, or by transmission by a telecommunications device, and shall be effective on the earliest of: (a) on the day when personally served, including delivery by overnight mail and courier service; (b) on the third day after its deposit in the United States mail; or (c) on the business day of confirmed transmission by telecommunications device. The addresses of the parties hereto (until notice of a change thereof is served as provided in this Section 6.2) shall be as follows:

If to CE:Destinations to Recovery, LLC
    20951 Burbank Blvd. Suite D
    Woodland Hills CA 91367
Attn: Daniel Samson

If to BA: *Jason Hennick*
*6386 MT. Ackerman Drive San Diego CA 92111*
Attn: *Jason Hennick*

6.3    Limitation on Liability. Any limitations of liability as set forth in this Agreement shall not apply to damages related to a breach of BA's privacy or security obligations under the Service Agreement or this Agreement.

6.4    Disclaimer. CE makes no warranty or representation that compliance by BA with this Agreement, HIPAA, or the HITECH Act will be adequate or satisfactory for BA's own purposes. BA is solely responsible for all decisions made by BA regarding the safeguarding of PHI.

6.5    Certification. To the extent that CE determines that such an examination of BA's security practices is necessary to comply with CE's legal obligations pursuant to HIPAA, CE or its authorized agents or contractors, may examine BA's facilities, systems, procedures and records as may be necessary for such agents or contractors to certify to CE the extent to which BA's security safeguards comply with HIPAA, the HITECH Act, or this Agreement.

6.6    Assistance in Litigation or Administrative Proceedings. BA shall make itself, and any Subcontractors, employees or agents assisting BA in the performance of its obligations under the Service Agreement or Agreement, available to CE, at no cost to CE, to testify as witnesses, or otherwise, in the event of litigation or administrative proceedings being commenced against CE, its directors, officers or employees based upon a claimed violation of HIPAA, the HITECH Act, or other laws relating to security and privacy, except where BA or its Subcontractor, employee or agent is a named adverse party.

6.7    No Third-Party Beneficiaries. Except as expressly provided for in the Privacy Rule, there are no third party beneficiaries to this Agreement. BA's obligations under this Agreement are owed to CE only.

6.8     Effect on Service Agreement. Except as specifically required to implement the purposes of this Agreement, or to the extent inconsistent with this Agreement, all other terms of the Service Agreement shall remain in force and effect.

6.9     Interpretation. The provisions of this Agreement shall prevail over any provisions in the Service Agreement that may conflict with or are inconsistent with any provision in this Agreement. This Agreement and the Service Agreement shall be interpreted as broadly as necessary to implement and comply with HIPAA and the HITECH Act. The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and the HITECH Act.

6.10     Conflicting Terms. In the event any terms of this Agreement conflict with any terms of the Service Agreement, the terms of this Agreement shall govern and control.

6.11     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, each of the undersigned has duly executed this Agreement on behalf of the party and on the date set forth below.

COVERED ENTITY                         BUSINESS ASSOCIATE

By:_____           By:_____
Print Name: _Daniel Samson_            Print Name: _Jason Heinrich_
Title: _President_                     Title: _Clinical supervisor_
Date: _10/13/2022_                     Date:
                                             _OCT 1 3 2022_

# EXHIBIT D

# AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is made by and between Destinations to Recovery LLC ("Client"), with a principal place of business at 21051 Warner Center Lane, Suite 220 Woodland Hills CA 91367, on the one hand, and <u>Keri Poppins, LLC/Keriann Parkes</u> ("Contractor"), with a principal place of business at <u>7341 W. Russell Rd, #1061, Las Vegas, NV 89113</u> *(Contractor address)* in the other hand, with reference to the following:

1. **Services to be Performed**

   Contractor agrees to perform the services described in Exhibit "A", which is attached to and made part of this Agreement, and such other tasks as may be agreed to between Client and Contractor.

2. **Compensation**

   In consideration for the services performed by Contractor, Client agrees to pay Contractor at various rates the exact amounts identified in Exhibit "A."

3. **Terms of Payment**

   Contractor shall send Client an invoice monthly. Client shall pay Contractor within thirty (30) calendar days from the date of the receipt of each invoice assuming there is no dispute as the amount owed. In the event of such a dispute, Client shall pay to Contractor those sums as to which there is no dispute and shall provide a letter identifying areas of disagreement with this thirty (30) day period. Contractor will have ten (10) calendar days from receipt of such letter to prepare a response in writing. In the event no response is received, it shall be assumed that Contractor waives any right to those sums in dispute. In the event Contractor does respond in the specified timeframe, Contractor and Client shall meet and confer in an attempt to resolve the dispute. In the event the dispute cannot be resolved, Client and Contractor shall be bound by the provisions of Paragraph 20.

4. **Late Fees**

   Late payments by Client shall be subject to late penalty fees of 1% per month from the due date until the amount is paid.

5. **Materials**

   Contractor will furnish all materials and equipment used to provide the services required by this Agreement.

6. **Term of Agreement**

   This Agreement will become effective when signed by both parties. This Agreement shall remain in effect for one (1) year from the effective date and will be renewed automatically each year thereafter unless notification is provided to the other party, as provided in Paragraph 7.

Contractor Initials _____                                                    Page 1 of 7

7. **Terminating the Agreement**

Notwithstanding the foregoing, either party may terminate with or without cause by providing at least thirty (30) days written notice to the other party.  Either party may terminate this Agreement "for cause" upon ten (10) days written notice. Cause includes:

- Material violation of this Agreement
- Nonpayment of Contractor's compensation after twenty (20) days written demand for payment
- Bankruptcy or insolvency of Contractor
- Sale of business by Contractor
- Death of Contractor

Contractor shall be entitled to full payment for services performed prior to the effective date of termination for those items not in dispute.

8. **Independent Contractor Status**

It is the express intention of the parties that Contractor is an independent contractor, and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor.

9. **Independent Contractor's Control**

Contractor shall determine the time, place, methods, details and means of performing the services contemplated by this Agreement. Client agrees to furnish access to any facilities or personnel necessary to facilitate Contractor's completion of the services, but Contractor shall be responsible for providing the tools, know-how and instrumentalities used in the project, including, but not limited to, such matters as:

- Education and training
- License
- Contractor's working hours
- Tools and equipment
- Work location

10. **Independent Contractor's Employees**

- Contractor shall furnish at his/her own discretion, selection, and expense, any labor required incidental to the performance of the services herein.
- Contractor shall be solely responsible for the direction and control of the employees and agents of Contractor, if any, performing services herein, including selection, hiring, firing, supervision, assignment, direction, and the setting of

Contractor Initials

wages, hours and working conditions. Contractor agrees to defend, indemnify and hold harmless Client from any and all claims brought by individuals selected by Contractor to perform services.

- Contractor assumes full and sole responsibility for the payment of wages and benefits to his/her employees, if any, and for all state and federal tax withholdings, unemployment insurance, social security taxes and workers' compensation coverage. Contractor shall defend, indemnify and hold harmless Client from any and all liability Client may incur by Contractor's failure to comply with the Section.

## 11. Additional Covenants and Responsibilities of Contractor

- Contractor and Contractor's employees or subcontractors understand and agree that they are not required to devote their full time to performing the services requited by this Agreement.
- Contractor is solely responsible for : (a) the payment of all federal, state and local taxes and all appropriate deductions or withholdings; (b) the payment and provision of any unemployment insurance, state disability benefits, workers' compensation benefits, vacation pay, salary or hourly compensation, holiday pay, health, medical, dental or group insurance benefits, or any pension or profit sharing.
- Obtaining any applicable business or other commercial licenses;

## 12. Waiver of Benefits

Contractor agrees and certifies that he/she understands that as an independent contractor, he/she is not entitled to participate in any benefit plans, programs, or policies maintained by Client for the Benefit of its employees, whether currently in effect or adopted in the future. If Contractor is determined by a court of competent jurisdiction of any state or federal agency to be common-law employee of Client for federal or state employment tax purposes or for any other purposes under applicable local, state or federal law, Contractor agrees and certifies:

- That while he/she may have a right to participate in such benefit plans, Contractor specifically and voluntarily waives, in connection with his/her acceptance of the Agreement, the right to participate in such plans on an irrevocable basis.

## 13. Local, State and Federal Taxes

Contractor agrees that Contractor is solely responsible for the payment of all federal, state and local taxes. Client will not:

- Withhold FICA from Contractor's payments or make FICA payments on Contractor's behalf
- Make state or Federal income tax from Contractor's payments

Contractor Initials

The charges include here do not include taxes. If Contractor is required to pay any federal, state or local sales, use, property or value added taxes based on the services provided under this Agreement, the taxes shall be separately billed to Client. Contractor shall not pay any interest or penalties incurred due to late payment or nonpayment of any taxes by Client.

## 14. Confidential and Proprietary Information and Materials

During and after the term of this Agreement, Contractor agrees to: (a) maintain as strictly confidential, and (b) not to use for the benefit of contractor or any third party, any information obtained from Client or developed in the course of Contractor's services under this Agreement, which information is of a confidential, private of proprietary nature and was not previously known to Contractor or publicly available prior to disclosure of such information to Contractor by Client, or prior to development of such information under this Agreement ("Confidential Information"). Such information includes, but is not limited to, customer lists, prospect lists, pricing strategies, operational techniques and production techniques. This obligation will cease only when such information becomes publicly available through publication by Client or rightful publication by others.

Upon termination of this Agreement, Contractor agrees to transfer and return to Client any materials containing Confidential Information, including all copies, in Contractor's possession.

The Contractor shall not use Confidential Information for any purpose other than for the benefit of the Client.

## 15. Non-Solicitation

During the term of this agreement and for a year thereafter, the Contractor on its own behalf or in the service or on behalf of others shall not induce or attempt to induce any officer, director, or employee or contractor to leave Client's employ.

## 16. Quality Standards

All services provided by Contractor under this Agreement must be satisfactory in the reasonable opinion of Client.

## 17. Exclusive Agreement

This is the entire Agreement between Contractor and Client. This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to rendering of services by Contractor for Client.

## 18. Modifying the Agreement

The Agreement may be modified only by a writing signed by both parties.

Contractor Initials

### 23. No Partnership

This Agreement does not create a partnership relationship. Neither Party has authority to enter into contracts on the other's behalf.

### 24. Applicable Law

The Agreement will be governed by the laws of the State of California.

### 25. Severability

The validity or un-enforceability of one or more provisions of the Agreement shall not affect the validity or enforceability of any of the other provisions hereof and this Agreement shall be construed in all respects as if such invalid and un-enforceable provisions were omitted.

### 26. No Assignment

Neither Contractor nor Client may assign their rights nor delegate their duties under this Agreement.

**Signatures**

**Client:**                                          **Contractor:**

Destinations to Recovery LLC                 Keri Poppins, LLC

x _____           x _____

Daniel Samson, President                     Keriann Parkes

Date: ___5/5/21___                              Date: ___4-1-21___

Contractor Initials

## EXHIBIT A

1. **Contractor's Fees and Services to be Performed Under Contract**

   Drama Instructor Service Fee:                  $100.00/group

   Contractor agrees to perform the following services listed below:

Position Summary:

The Drama Instructor uses the performance arts to promote psychological, emotional, and social change. Drama Instructor will offer a safe environment for an individual or group to explore, address, and deal with personal and social difficulties.

Responsibilities and Duties:

- Encourage and support clients in creative drama and theater work, involving the expressive use of movement and objects, using techniques such as improvisation, storytelling, play, role-play, myth, ritual, script work, and devising and presenting performances.
- Encourage self-awareness, exploration, and reflection on feelings and relationships.
- Provide opportunities for clients to learn new skills.
- Initiate spontaneous exploration of personal issues.
- Enable clients to experiment with new ways of thinking and behaving.
- Use appropriate equipment, materials and therapeutic 'props', such as puppets and other objects.
- Write case notes and report progress to professional staff.

   **Signatures**

   Client:                                    Contractor:

   Destinations to Recovery LLC               Keri Poppins, LLC

   x _____               x _____

   Daniel Samson, President                   Keriann Parkes

   Date: 5/5/2021                             Date: 4-1-21

Contractor Initials _____                                        Page 7 of 7

### 19. Waiver

No waiver of any item, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement.

### 20. Resolving Disputes

If a dispute arises under this Agreement, the parties agree to first try to resolve the dispute with the help of a mutually agreed-upon mediator in Los Angeles County. Any costs and fees other than attorney fees associated with the mediation shall be shared equally by the parties. If it proves impossible to arrive at a mutually satisfactory solution through mediation, the parties agree to submit the dispute to arbitration pursuant to the American Arbitration Association's Commercial Dispute Rules. The arbitration shall take place in Los Angeles County. Judgment upon the awarded rendered by the arbitrator may be entered in any court having jurisdiction to do so. Cost of arbitration, including attorney fees, will be allocated by the arbitrator.

### 21. Limited Liability

Contractor shall indemnify and hold Client harmless against any and all losses, damages, costs, expenses or attorney's fees resulting from or in any way arising out of breach of any warranty, covenant or agreement by Contractor under this Agreement. Contractor will further indemnify and hold Client harmless against any and all losses, damages, costs, expense or attorney's fees resulting from work undertaken pursuant to this Agreement. Contractor agrees to furnish upon request of Client a certificate of insurance evidence purchase of general liability insurance with limits of no less than $1,000,000 per occurrence and $1,000,000 in the aggregate.

### 22. Notices

All notices and other communications in connection with this Agreement shall be in writing and shall be considered given as follows:

- When delivered personally to the recipient's address as stated on this Agreement
- Three days after being deposited in the United States mail, with postage prepaid to the recipient's address as stated on this Agreement; or
- When sent by fax to the last fax number of the recipient known to the person giving notice, such notice is effective upon receipt provided that a duplicate copy of the notice is promptly given by first class mail, or the recipient delivers a written confirmation of receipt.

Contractor Initials _____

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") was entered into as of the 20th of October ("Commencement Date"), by and between Destinations to Recovery, LLC ("Facility"), located at Warner Center Lane, Suite #220 Woodland Hills, CA 91367 , and Keri Poppins, LLC/Keriann Parkes ("Business Associate"), located at 7340 W. Russell Rd., #1061, Las Vegas, NV 89113 (*Business Associate Address*). The Facility is referred to below as "CE." The Business Associate is referred to below as "BA."

## RECITALS

A.      This Agreement is entered into by CE and BA for the purposes of complying with privacy and security regulations issued by the United States Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Health Information Technology for Economic and Clinical Health Act ("HITECH Act").

B.      CE is a covered entity as such term is defined under HIPAA, and as such is required to comply with the requirements thereof regarding the confidentiality and privacy of Protected Health Information ("PHI")(defined below).

C.      BA provides services to or on behalf of CE pursuant to the terms of Professional Service agreement, dated as of 04/01/2021, between CE and BA (the "Service Agreement"), that may require CE to disclose individually identifiable health information to BA, some of which may constitute Protected Health Information ("PHI")(defined below).

**NOW THEREFORE,** in consideration of the promises and mutual agreement contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as set forth below.

## AGREEMENT

1.    **DEFINITIONS**

1.1    General. The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules: Breach, Designated Record Set, Disclosure, electronic Protected Health Information ("ePHI"), Health Care Operations, Individual, Minimum Necessary, Notice of Privacy Practices, Protected Health Information ("PHI"), Required By Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

1.2    Specific Definitions.

1.2.1    Business Associate. "Business Associate" shall have the meaning given to such term under HIPAA, including but not limited to, 45 C.F.R. § 160.103.

6.8     <u>Effect on Service Agreement</u>. Except as specifically required to implement the purposes of this Agreement, or to the extent inconsistent with this Agreement, all other terms of the Service Agreement shall remain in force and effect.

6.9     <u>Interpretation</u>. The provisions of this Agreement shall prevail over any provisions in the Service Agreement that may conflict with or are inconsistent with any provision in this Agreement. This Agreement and the Service Agreement shall be interpreted as broadly as necessary to implement and comply with HIPAA and the HITECH Act. The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and the HITECH Act.

6.10    <u>Conflicting Terms</u>. In the event any terms of this Agreement conflict with any terms of the Service Agreement, the terms of this Agreement shall govern and control.

6.11    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, each of the undersigned has duly executed this Agreement on behalf of the party and on the date set forth below.

COVERED ENTITY                          BUSINESS ASSOCIATE

By: _____            By: _____
Print Name: Daniel Samson              Print Name: KeniPapas LLC/Keniun Parker
Title: President                       Title: Director
Date:                                  Date:
     5/5/21                                 4-1-21

# EXHIBIT E

# AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is made by and between Destinations to Recovery LLC ("Client"), with a principal place of business at 20951 Burbank Blvd Suite D Woodland Hills CA 91367, on the one hand, and **Edith Moses, LMFT** ("Contractor"), with a principal place of business at 28825 Timberlane St. *(Contractor address)* in the other hand, with reference to the following:

1. **Services to be Performed**

    Contractor agrees to perform the services described in Exhibit "A", which is attached to and made part of this Agreement, and such other tasks as may be agreed to between Client and Contractor.

2. **Compensation**

    In consideration for the services performed by Contractor, Client agrees to pay Contractor at various rates the exact amounts identified in Exhibit "A."

3. **Terms of Payment**

    Contractor shall send Client an invoice monthly. Client shall pay Contractor within thirty (30) calendar days from the date of the receipt of each invoice assuming there is no dispute as the amount owed. In the event of such a dispute, Client shall pay to Contractor those sums as to which there is no dispute and shall provide a letter identifying areas of disagreement with this thirty (30) day period. Contractor will have ten (10) calendar days from receipt of such letter to prepare a response in writing. In the event no response is received, it shall be assumed that Contractor waives any right to those sums in dispute. In the event Contractor does respond in the specified timeframe, Contractor and Client shall meet and confer in an attempt to resolve the dispute. In the event the dispute cannot be resolved, Client and Contractor shall be bound by the provisions of Paragraph 20.

4. **Late Fees**

    Late payments by Client shall be subject to late penalty fees of 1% per month from the due date until the amount is paid.

5. **Materials**

    Contractor will furnish all materials and equipment used to provide the services required by this Agreement.

6. **Term of Agreement**

    This Agreement will become effective when signed by both parties. This Agreement shall remain in effect for one (1) year from the effective date and will be renewed automatically each year thereafter unless notification is provided to the other party, as provided in Paragraph 7.

Contractor Initials _____

7. **Terminating the Agreement**

Notwithstanding the foregoing, either party may terminate with or without cause by providing at least thirty (30) days written notice to the other party. Either party may terminate this Agreement "for cause" upon ten (10) days written notice. Cause includes:

- Material violation of this Agreement
- Nonpayment of Contractor's compensation after twenty (20) days written demand for payment
- Bankruptcy or insolvency of Contractor
- Sale of business by Contractor
- Death of Contractor

Contractor shall be entitled to full payment for services performed prior to the effective date of termination for those items not in dispute.

8. **Independent Contractor Status**

It is the express intention of the parties that Contractor is an independent contractor, and not an employee, agent, joint venturer or partner of Client. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Client and Contractor or any employee or agent of Contractor.

9. **Independent Contractor's Control**

Contractor shall determine the time, place, methods, details and means of performing the services contemplated by this Agreement. Client agrees to furnish access to any facilities or personnel necessary to facilitate Contractor's completion of the services, but Contractor shall be responsible for providing the tools, know-how and instrumentalities used in the project, including, but not limited to, such matters as:

- Education and training
- License
- Contractor's working hours
- Tools and equipment
- Work location

10. **Independent Contractor's Employees**

- Contractor shall furnish at his/her own discretion, selection, and expense, any labor required incidental to the performance of the services herein.
- Contractor shall be solely responsible for the direction and control of the employees and agents of Contractor, if any, performing services herein, including selection, hiring, firing, supervision, assignment, direction, and the setting of wages, hours and working conditions. Contractor agrees to defend, indemnify

and hold harmless Client from any and all claims brought by individuals selected by Contractor to perform services.

- Contractor assumes full and sole responsibility for the payment of wages and benefits to his/her employees, if any, and for all state and federal tax withholdings, unemployment insurance, social security taxes and workers' compensation coverage. Contractor shall defend, indemnify and hold harmless Client from any and all liability Client may incur by Contractor's failure to comply with the Section.

11. **Additional Covenants and Responsibilities of Contractor**

- Contractor and Contractor's employees or subcontractors understand and agree that they are not required to devote their full time to performing the services requited by this Agreement.
- Contractor is solely responsible for : (a) the payment of all federal, state and local taxes and all appropriate deductions or withholdings; (b) the payment and provision of any unemployment insurance, state disability benefits, workers' compensation benefits, vacation pay, salary or hourly compensation, holiday pay, health, medical, dental or group insurance benefits, or any pension or profit sharing.
- Obtaining any applicable business or other commercial licenses;

12. **Waiver of Benefits**

Contractor agrees and certifies that he/she understands that as an independent contractor, he/she is not entitled to participate in any benefit plans, programs, or policies maintained by Client for the Benefit of its employees, whether currently in effect or adopted in the future. If Contractor is determined by a court of competent jurisdiction of any state or federal agency to be common-law employee of Client for federal or state employment tax purposes or for any other purposes under applicable local, state or federal law, Contractor agrees and certifies:

- That while he/she may have a right to participate in such benefit plans, Contractor specifically and voluntarily waives, in connection with his/her acceptance of the Agreement, the right to participate in such plans on an irrevocable basis.

13. **Local, State and Federal Taxes**

Contractor agrees that Contractor is solely responsible for the payment of all federal, state and local taxes.  Client will not:

- Withhold FICA from Contractor's payments or make FICA payments on Contractor's behalf
- Make state or Federal income tax from Contractor's payments

Contractor Initials _____                                    Page 3 of 7

The charges include here do not include taxes. If Contractor is required to pay any federal, state or local sales, use, property or value added taxes based on the services provided under this Agreement, the taxes shall be separately billed to Client. Contractor shall not pay any interest or penalties incurred due to late payment or nonpayment of any taxes by Client.

14. **Confidential and Proprietary Information and Materials**

During and after the term of this Agreement, Contractor agrees to: (a) maintain as strictly confidential, and (b) not to use for the benefit of contractor or any third party, any information obtained from Client or developed in the course of Contractor's services under this Agreement, which information is of a confidential, private of proprietary nature and was not previously known to Contractor or publicly available prior to disclosure of such information to Contractor by Client, or prior to development of such information under this Agreement ("Confidential Information"). Such information includes, but is not limited to, customer lists, prospect lists, pricing strategies, operational techniques and production techniques. This obligation will cease only when such information becomes publicly available through publication by Client or rightful publication by others.

Upon termination of this Agreement, Contractor agrees to transfer and return to Client any materials containing Confidential Information, including all copies, in Contractor's possession.

The Contractor shall not use Confidential Information for any purpose other than for the benefit of the Client.

15. **Non-Solicitation**

During the term of this agreement and for a year thereafter, the Contractor on its own behalf or in the service or on behalf of others shall not induce or attempt to induce any officer, director, or employee or contractor to leave Client's employ.

16. **Quality Standards**

All services provided by Contractor under this Agreement must be satisfactory in the reasonable opinion of Client.

17. **Exclusive Agreement**

This is the entire Agreement between Contractor and Client. This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to rendering of services by Contractor for Client.

18. **Modifying the Agreement**

The Agreement may be modified only by a writing signed by both parties.

Contractor Initials _____

19. **Waiver**

No waiver of any item, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement.

20. **Resolving Disputes**

If a dispute arises under this Agreement, the parties agree to first try to resolve the dispute with the help of a mutually agreed-upon mediator in Los Angeles County.  Any costs and fees other than attorney fees associated with the mediation shall be shared equally by the parties. If it proves impossible to arrive at a mutually satisfactory solution through mediation, the parties agree to submit the dispute to arbitration pursuant to the American Arbitration Association's Commercial Dispute Rules.  The arbitration shall take place in Los Angeles County. Judgment upon the awarded rendered by the arbitrator may be entered in any court having jurisdiction to do so.  Cost of arbitration, including attorney fees, will be allocated by the arbitrator.

21. **Limited Liability**

Contractor shall indemnify and hold Client harmless against any and all losses, damages, costs, expenses or attorney's fees resulting from or in any way arising out of breach of any warranty, covenant or agreement by Contractor under this Agreement. Contractor will further indemnify and hold Client harmless against any and all losses, damages, costs, expense or attorney's fees resulting from work undertaken pursuant to this Agreement. Contractor agrees to furnish upon request of Client a certificate of insurance evidence purchase of general liability insurance with limits of no less than $1,000,000 per occurrence and $1,000,000 in the aggregate.

22. **Notices**

All notices and other communications in connection with this Agreement shall be in writing and shall be considered given as follows:

- When delivered personally to the recipient's address as stated on this Agreement
- Three days after being deposited in the United States mail, with postage prepaid to the recipient's address as stated on this Agreement; or
- When sent by fax to the last fax number of the recipient known to the person giving notice, such notice is effective upon receipt provided that a duplicate copy of the notice is promptly given by first class mail, or the recipient delivers a written confirmation of receipt.

23. **No Partnership**

This Agreement does not create a partnership relationship. Neither Party has authority to enter into contracts on the other's behalf.

24. **Applicable Law**

The Agreement will be governed by the laws of the State of California.

25. **Severability**

The validity or un-enforceability of one or more provisions of the Agreement shall not affect the validity or enforceability of any of the other provisions hereof and this Agreement shall be construed in all respects as if such invalid and un-enforceable provisions were omitted.

26. **No Assignment**

Neither Contractor nor Client may assign their rights nor delegate their duties under this Agreement.

**Signatures**

**Client:**

Destinations to Recovery LLC

x _____

Daniel Samson, President

Date: _3/30/22_

**Contractor:**

Edith Moses, LMFT

x _____

Edith Moses, LMFT

Date: _3/28/22_

Contractor Initials _____

EXHIBIT A

**Contractor's service fees to be performed under contract:**

Professional Service Fee Effective 4/1/2022:        $150.00 per hour

**Contractor agrees to perform the following services listed below:**

The Art therapist will use visual art media to help people who may struggle to communicate verbally to express their feelings and confront difficult emotional issues.

**Duties and Responsibilities:**

- Assess the needs of the client by listening and providing guidance;
- Work creatively with various clients or groups in a therapeutic setting, ensuring a safe and secure environment;
- Enable clients to explore their artwork and the process they used to create it;
- Assess and understand the feelings or temperament of others;
- Constructively challenge the behavior and attitude of your clients;
- Attend meetings and case conferences to share ideas, expertise and good practice;
- Maintain art therapy space and materials;
- Write case notes and report progress to professional staff.
- Receive support and discuss ideas in individual supervision;
- Keep up to date with developments in the profession by attending seminars, lectures, and workshops.

**Signatures**

**Client:**

Destinations to Recovery LLC

x _____

Daniel Samson, President

Date: 3/30/22 _____

**Contractor:**

Edith Moses, LMFT

x _____

Edith Moses, LMFT

Date: 3/28/22 _____

Contractor Initials _____                                        Page 7 of 7

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") was entered into as of the April 1, 2022 ("Commencement Date"), by and between Destinations to Recovery, LLC ("Facility"), located at 20951 Burbank Blvd. Suite D Woodland Hills, CA 91367 , and Edith Moses, LMFT ("Business Associate"), located at 28825 Timberlane St. (*Business Associate Address*). The Facility is referred to below as "CE." The Business Associate is referred to below as "BA."

### RECITALS

A.      This Agreement is entered into by CE and BA for the purposes of complying with privacy and security regulations issued by the United States Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Health Information Technology for Economic and Clinical Health Act ("HITECH Act").

B.      CE is a covered entity as such term is defined under HIPAA, and as such is required to comply with the requirements thereof regarding the confidentiality and privacy of Protected Health Information ("PHI")(defined below).

C.      BA provides services to or on behalf of CE pursuant to the terms of <u>Professional Service</u> agreement, dated as of 4/1/2022, between CE and BA (the "Service Agreement"), that may require CE to disclose individually identifiable health information to BA, some of which may constitute Protected Health Information ("PHI")(defined below).

**NOW THEREFORE,** in consideration of the promises and mutual agreement contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as set forth below.

### AGREEMENT

1.  **DEFINITIONS**

    1.1     <u>General</u>.  The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules: Breach, Designated Record Set, Disclosure, electronic Protected Health Information ("ePHI"), Health Care Operations, Individual, Minimum Necessary, Notice of Privacy Practices, Protected Health Information ("PHI"), Required By Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

    1.2     <u>Specific Definitions</u>.

        1.2.1    <u>Business Associate</u>. "Business Associate" shall have the meaning given to such term under HIPAA, including but not limited to, 45 C.F.R. § 160.103.

1.2.2    Covered Entity. "Covered Entity" shall have the meaning given to such term under HIPAA, including but not limited to, 45 C.F.R. § 160.103.

1.2.3    HIPAA. "HIPAA" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 C.F.R. Parts 160 and 164.

1.2.4    Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E.

1.2.5    Security Rule. "Security Rule" shall mean the Security Standards for the Protection of Electronic Protected Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and C.

## 2.    **OBLIGATIONS OF BUSINESS ASSOCIATE**

2.1    Permitted Uses and Disclosures of PHI. BA, its directors, officers, Subcontractors, employees, affiliates, agents, and representatives shall use or disclose PHI only (a) in connection with fulfilling its duties and obligations under this Agreement and the Service Agreement; (b) for the proper management and administration of BA; or (c) to carry out the legal responsibilities of BA.

2.2    Prohibited Uses and Disclosures of PHI. BA shall not use or disclose PHI other than as permitted or Required By Law. BA shall not use or disclose PHI in any manner that violates state or federal laws, or would violate such laws if used or disclosed in such manner by CE.

2.3    Third Party Disclosures. BA shall obtain and maintain an agreement with each Subcontractor that has or will have access to PHI which is received from, created, or received by BA on behalf of CE, pursuant to which agreement such Subcontractor agrees to be bound by the same restrictions, terms, and conditions that apply to BA pursuant to this Agreement with respect to such PHI. BA shall also (a) obtain reasonable assurances from the Subcontractor that the PHI will be held in confidence and used or further disclosed only as Required by Law or for the purpose for which it was disclosed, and (b) obligate such person to notify BA of any instance in which PHI is used or disclosed that is not provided for in the Service Agreement, including incidents that constitute breaches of unsecured PHI or any security incident of which it becomes aware in which the confidentiality of the PHI has been breached.

2.4    Minimum Necessary. BA and its agents or Subcontractors shall request, use and disclose only the minimum amount of PHI necessary to accomplish the purpose of the request, use or disclosure. To the extent BA uses or discloses PHI received from, created, or received by BA on behalf of CE, BA will make reasonable efforts to limit PHI to the Minimum Necessary to accomplish the intended purpose of the use, disclosure or request.

2.5    Access of Individuals to PHI.

2.5.1    BA shall make PHI maintained by BA or its agents or Subcontractors available to CE for inspection and copying within five (5) business days of a written request by CE to enable CE to fulfill its obligations under the Privacy Rule. If BA maintains ePHI, BA shall provide such information in electronic format to enable CE to fulfill its obligations under 45 C.F.R. § 164.524.

2.5.2    In the event an Individual or entity requests access to PHI from BA, BA shall forward such request to CE within two (2) business days. CE is responsible for determining what PHI shall be unavailable to the Individual pursuant to 45 C.F.R. § 164.524.

2.5.3    Any denial of access to PHI determined by CE pursuant to 45 C.F.R. § 164.524, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals, and/or complaints arising from denials.

2.5.4    BA shall cooperate with CE in a manner that enables CE to meet its obligations under 45 C.F.R § 164.524.

2.6    <u>Amendment of PHI.</u>

2.6.1    In order to allow CE to respond to a request by an Individual for an amendment pursuant to 45 C.F.R. § 164.526, BA shall, within five (5) business days of a written request by CE for PHI about an Individual contained in a Designated Record Set, make such PHI available to CE for so long as such information is maintained in the Designated Record Set.

2.6.2    In the event that any Individual requests that the BA amend his/her PHI, BA shall forward such request to CE within two (2) business days. The CE is responsible for determining what PHI is unavailable to the Individual pursuant to 45 C.F.R. § 164.526.

2.6.3    Any denial of an amendment to PHI determined by CE pursuant to 45 C.F.R. § 164.526, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals and/or complaints arising from denials.

2.6.4    BA shall cooperate with CE in a manner that enables CE to meet its obligations under 45 C.F.R. § 164.526.

2.6.5    Within ten (10) business days of receipt of a request from CE to amend an Individual's PHI in a Designated Record Set, BA shall incorporate any amendments, statements of disagreement, and/or rebuttals approved by CE into its Designated Record Set, as required by 45 C.F.R. § 164.526.

2.7    <u>Accounting of Disclosures.</u>

2.7.1    In order to allow CE to respond to a request by an Individual for an accounting of disclosures of a Designated Record Set pursuant to 45 C.F.R. § 164.528, BA shall, within five (5) business days of a CE's written request for an accounting of disclosures of PHI about an Individual, make such information available to CE.  At a minimum, BA shall provide

CE with the following information: (a) the date of the disclosure; (b) the name of the entity or person who received the PHI, and, if known, the address of such entity or person; (c) a brief description of the PHI disclosed; and (d) a brief statement of the purpose of such disclosure.

2.7.2    In the event an Individual requests an accounting of disclosures of PHI directly from BA, BA shall forward such request to CE within two (2) business days.

2.7.3    BA shall implement an appropriate recordkeeping process to enable it to comply with the requirements of 45 C.F.R. § 164.528.

2.7.4    BA shall cooperate with CE in a manner that enables CE to meet its obligations under 45 C.F.R. § 164.528.

2.8    Subpoena or Legal Request for PHI. BA shall notify CE within two (2) business days of receipt of any request, subpoena, or other legal process to obtain PHI received from, or created or received by BA on behalf of CE. CE, in conjunction with BA, shall determine whether BA may disclose PHI pursuant to such request, subpoena, or other legal process. BA agrees to comply with CE's determination in such instances. BA agrees to cooperate fully with CE in any legal challenge initiated by CE in response to such request, subpoena, or other legal process.  The provisions of this Section shall survive the termination of this Agreement.

2.9    Reporting Breaches, Improper Disclosures, and Security Incidents.

2.9.1    Breaches. In the event of a Breach of any Unsecured PHI that BA accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds or uses on behalf of CE, BA shall report such Breach to CE immediately, but in no event more than five (5) days after discovering the breach. Notice of a Breach shall include, at a minimum: (a) the identification of each Individual whose PHI has been, or is reasonably believed to have been accessed, acquired or disclosed during or as a result of the Breach; (b) the date of the Breach, if known; (c) the scope of the Breach; and (d) a description of the BA's response to the Breach. BA shall, in consultation with CE, mitigate, to the extent practicable any harmful effect of such Breach that is known to the BA.

2.9.2    Improper Disclosures. BA shall report any unauthorized or improper use or disclosure of PHI regarding the terms and conditions of this Agreement or applicable federal and state laws to CE as soon as practicable, but in no event later than five (5) business days of the date on which BA becomes aware of such unauthorized or improper use or disclosure. BA shall, in consultation with CE, mitigate to the extent practicable any harmful effect of such improper disclosures.

2.9.3    Security Incidents. BA shall report to CE any Security Incident of which it becomes aware within five (5) business days.

2.10    Safeguards.

2.10.1  BA shall employ appropriate administrative, technical, and physical safeguards, consistent with the size and complexity of BA's operations, to protect the confidentiality and security of PHI that it creates, receives, maintains, or transmits on behalf of CE and to prevent the use or disclosure of PHI in any manner inconsistent with the terms of this Agreement.

2.10.2  BA shall implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the ePHI that it creates, receives, maintains, or transmits on behalf of CE. Such safeguards shall include implementing written policies and procedures in compliance with HIPAA and the HITECH Act, conducting a security risk assessment, and training BA employees who will have access to PHI on BA's policies and procedures as required by HIPAA and the HITECH Act.

2.10.3  BA shall provide CE with a copy of written policies, procedures, and other information about its security program upon request.

2.10.4  Subject to the conditions set forth in Section 2.11 of this Agreement, CE shall have the right to audit BA's compliance with its security program and the terms of this Agreement. BA shall cooperate in such audits and shall provide copies of any documents requested by CE in the most efficient manner possible.

2.11    Availability of Books and Records to CE. Within ten (10) calendar days of a written request by CE, BA and its agents or Subcontractors shall permit CE to audit BA's internal practices, books, and records at reasonable times as they pertain to the use and disclosure of PHI received from, or created or received by BA on behalf of CE in order to ensure that CE and BA are in compliance with the requirements of this Agreement, and to the extent that CE determines such examination is necessary to comply with CE's obligations pursuant to HIPAA. The availability of books and records from BA to CE is subject to the following conditions:

(i)     BA and CE shall mutually agree in advance upon the scope, timing, and location of such an inspection.

(ii)    CE shall protect the confidentiality of all confidential and proprietary information of BA to which CE has access during the course of inspection.

(iii)   CE shall execute a nondisclosure agreement, under terms mutually agreed upon by the parties, if requested by BA.

The fact that CE inspects, or fails to inspect, or has the right to inspect BA's facilities, systems, books, records, agreements, policies or procedures, does not relieve BA of its responsibility to comply with this Agreement, nor does CE's (i) failure to detect, or (ii) detection, but failure to notify BA or require BA's remediation of any unsatisfactory practices, constitute acceptance of such practice or constitute a waiver of CE's rights under the Services Agreement or this Agreement.

2.12    <u>Governmental Access to Records</u>.  BA shall make its internal practices, books, and records relating to the use and disclosure of PHI available to the Secretary for purposes of determining BA's compliance with the Privacy Rule and the Security Rule. BA shall notify CE within ten (10) calendar days of learning that BA has become the subject of an audit, compliance review, or complaint investigation by the Secretary. BA shall provide to CE a copy of such request for information and a copy of any PHI that BA provides to the Secretary concurrently with providing such PHI to the Secretary.

2.13    <u>Data Ownership of PHI</u>. BA acknowledges that, as between BA and CE, BA has no ownership rights with respect to PHI received from, created for, or used on behalf of CE.

## 3.    **OBLIGATIONS OF COVERED ENTITY**

3.1    <u>Obligations</u>. CE warrants that CE, its directors, officers, subcontractors, employees, affiliated agents, and representatives: (a) shall comply with the Privacy Rule in its use or disclosure of PHI; (b) shall not use or disclose PHI in any manner that violates applicable federal and state laws; (c) shall not request BA to use or disclose PHI in any manner that violates applicable federal and state laws if such use or disclosure were done by CE; and (d) may request BA to disclose PHI directly to another party only for the purposes allowed by the Privacy Rule.

3.2    <u>Breach</u>. CE shall provide notice to BA of any pattern of activity or practice of BA that CE believes constitutes a material breach or violation of the BA's obligation under the Service Agreement or this Agreement within five (5) calendar days of discovery and shall meet with BA to discuss and attempt to resolve the problem as one of the reasonable steps to cure the breach or end the violation.

3.3    <u>Permissible Requests by CE</u>. CE shall not request BA to use or disclose PHI in any manner that would not be permissible under HIPAA if done by CE, except as permitted pursuant to Section 2

3.4    <u>Notice of Privacy Practices</u>. Upon request from BA, CE will provide BA with a copy of its Notice of Privacy Practices.

## 4.    **TERM AND TERMINATION**

4.1    <u>Term</u>. This Agreement shall commence on the Commencement Date and shall continue, unless earlier terminated pursuant to the terms and conditions herein, until the expiration of the Service Agreement (the "Term").

4.2    <u>Material Breach</u>. A breach by BA of any provision of this Agreement, as determined by CE, shall constitute a material breach of this Agreement and shall provide grounds for immediate termination of the Service Agreement, any provision of the Service Agreement to the contrary notwithstanding.

4.2.1    Where CE has knowledge of a material breach by BA, and a cure is possible, CE shall provide BA with an opportunity to cure.  Where said breach is not cured

within ten (10) business days of BA's receipt of notice from CE of said breach, CE shall terminate the Service Agreement.

4.2.2  At the expense of BA, CE shall have the right to cure any breach of BA's obligations under this Agreement. CE shall give BA notice of its election to cure any such breach, and BA shall cooperate fully in the efforts by CE to cure BA's breach. All requests from CE to BA for payment for such services shall be paid within thirty (30) business days.

4.2.3  In the event that BA or CE has knowledge of a material breach of this Agreement by the other, and a cure is not possible, the non-breaching party shall terminate the portion of the Service Agreement that is affected by the breach. When neither cure nor termination is feasible, the non-breaching party shall report the violation to the Secretary.

4.3  Judicial or Administrative Proceeding. CE may terminate the Service Agreement, effectively immediately, if: (a) BA is named as a defendant in a criminal proceeding for a violation of HIPAA, the HITECH Act, or other privacy or security laws; or (b) a finding or stipulation that the BA has violated any standard or requirement of HIPAA, the HITECH Act, or other privacy or security laws is made in any administrative or civil proceeding in which BA has been joined.

4.4  Effect of Termination. Upon termination of the Service Agreement for any reason, BA shall return or destroy all PHI that BA or its agents or Subcontractors still maintain in any form, and shall retain no copies of such PHI. BA shall certify in writing to CE that the PHI has been destroyed. If return or destruction is not feasible, as determined by CE, BA shall continue to extend the protections of Section 2 of this Agreement to such information, and limit further use of such PHI to those purposes that make the return or destruction of such PHI impractical.  All destruction shall be in accordance with HIPAA, the HITECH Act, and applicable state law.

## 5.   **INSURANCE AND INDEMNIFICATION**

5.1  Insurance. No later than one (1) month from Commencement Date of this Agreement BA shall obtain, or ensure that its existing liability insurance covers, and shall maintain during the term of this Agreement liability insurance covering claims based on a violation of the Privacy Rule or any applicable law or regulation concerning the privacy of patient information and claims based on obligations pursuant to this Agreement in an amount not less than $1,000,000 per claim.  Such insurance shall be in the form of occurrence-based coverage and shall name CE as an additional named insured. A copy of such policy or certificate evidencing the policy shall be provided to CE upon written notice.

5.2  Indemnification. BA hereby agrees to indemnify and hold CE and its employees and agents harmless from and against any and all loss, liability, or damages, including reasonable attorneys' fees, arising out of or in any manner occasioned by a breach of any provision of this Agreement by BA, its employees, agents, or Subcontractors.

## 6.   **MISCELLANEOUS**

6.1    <u>Amendment</u>. The parties agree to take such action to amend this Agreement from time to time as is necessary to comply with the requirements of HIPAA.

6.2    <u>Notices</u>. Any notice, demand or communication required, permitted or desired to be given hereunder shall be in writing and shall be delivered personally, by certified mail, return receipt requested, postage prepaid, or by transmission by a telecommunications device, and shall be effective on the earliest of: (a) on the day when personally served, including delivery by overnight mail and courier service; (b) on the third day after its deposit in the United States mail; or (c) on the business day of confirmed transmission by telecommunications device. The addresses of the parties hereto (until notice of a change thereof is served as provided in this Section 6.2) shall be as follows:

If to CE:Destinations to Recovery, LLC

    20951 Burbank Blvd. Suite D

    Woodland Hills CA 91367

Attn: Daniel Samson

If to BA:  Edith Moses

28825 Timberlane St, Agoura Hills CA 91301

Attn:  Edith Moses

6.3    <u>Limitation on Liability</u>. Any limitations of liability as set forth in this Agreement shall not apply to damages related to a breach of BA's privacy or security obligations under the Service Agreement or this Agreement.

6.4    <u>Disclaimer</u>. CE makes no warranty or representation that compliance by BA with this Agreement, HIPAA, or the HITECH Act will be adequate or satisfactory for BA's own purposes. BA is solely responsible for all decisions made by BA regarding the safeguarding of PHI.

6.5    <u>Certification</u>. To the extent that CE determines that such an examination of BA's security practices is necessary to comply with CE's legal obligations pursuant to HIPAA, CE or its authorized agents or contractors, may examine BA's facilities, systems, procedures and records as may be necessary for such agents or contractors to certify to CE the extent to which BA's security safeguards comply with HIPAA, the HITECH Act, or this Agreement.

6.6    <u>Assistance in Litigation or Administrative Proceedings</u>. BA shall make itself, and any Subcontractors, employees or agents assisting BA in the performance of its obligations under the Service Agreement or Agreement, available to CE, at no cost to CE, to testify as witnesses, or otherwise, in the event of litigation or administrative proceedings being commenced against CE, its directors, officers or employees based upon a claimed violation of HIPAA, the HITECH Act, or other laws relating to security and privacy, except where BA or its Subcontractor, employee or agent is a named adverse party.

6.7    <u>No Third-Party Beneficiaries</u>. Except as expressly provided for in the Privacy Rule, there are no third party beneficiaries to this Agreement. BA's obligations under this Agreement are owed to CE only.

6.8 <u>Effect on Service Agreement</u>. Except as specifically required to implement the purposes of this Agreement, or to the extent inconsistent with this Agreement, all other terms of the Service Agreement shall remain in force and effect.

6.9 <u>Interpretation</u>. The provisions of this Agreement shall prevail over any provisions in the Service Agreement that may conflict with or are inconsistent with any provision in this Agreement. This Agreement and the Service Agreement shall be interpreted as broadly as necessary to implement and comply with HIPAA and the HITECH Act. The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and the HITECH Act.

6.10 <u>Conflicting Terms</u>. In the event any terms of this Agreement conflict with any terms of the Service Agreement, the terms of this Agreement shall govern and control.

6.11 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, each of the undersigned has duly executed this Agreement on behalf of the party and on the date set forth below.

COVERED ENTITY                    BUSINESS ASSOCIATE

By: _____        By: _____
Print Name: Daniel Sandon          Print Name: Edith Moses
Title: President                   Title: LMFT, ATR
Date: 3/30/22                      Date: 3/29/22

| In re: | CHAPTER: **11** |
|---|---|
| **Destinations to Recovery, LLC** | |
| Debtor(s). | CASE NUMBER: **1:24-bk-11877-MB** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**2566 Overland Ave, Suite 650
Los Angeles, CA 90064**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S  FIRST  OMNIBUS  OBJECTION  TO
CERTAIN  PROPERTY WAGE CLAIMS AND REQUEST TO REQUEST TO RECLASSIFY AS A GENERAL
UNSECURED CLAIMS; DECLARATION OF DANIEL DECLARATION OF DANIEL SAMSON IN SUPPORT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR,
the foregoing document will be served by the court via NEF and hyperlink to the document. On **04/08/2025** , I checked the CM/ECF
docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice
List to receive NEF transmission at the email addresses stated below:

    **United States Trustee (SV):ustpregion16.wh.ecf@usdoj.gov
    Russell Clementson: russell.clementson@usdoj.gov
    Mark M Sharf (TR):  mark@sharflaw.com
    Amitkumar Sharma :  amit.sharma@aisinfo.com
    Mandy Youngblood:  csbk@gmfinancial.com
    Gregory M Salvato:  gsalvato@salvatoboufadel.com
    Yolanda Zepeda:  scif.legal.bk@scif.com
    Tamar Terzian:  tterzian@hansonbridgett.com
    Eric Bensamochan:  eric@eblawfirm.us**

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On  **04/08/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge **will be completed** no later than 24 hours
after the document is filed.

    **Hon. Martin R. Barash
    United States Bankruptcy Court
    Central District of California
    21041 Burbank Boulevard, Suite 342 / Courtroom 303
    Woodland Hills, CA 91367**

☑ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each
person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or
entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile
transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 8, 2025 | Karina Arita | /s/ Karina Arita |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | | CHAPTER **11** |
|---|---|---|
| **Destinations to Recovery, LLC** | Debtor(s). | CASE NUMBER **1:24-bk-11877** |

## ADDITIONAL INFORMATION:

Destinations to Recovery, LLC
20951 Burbank Blvd. Suite D
Woodland Hills, CA 91367

Eric Bensamochan, Esq. SBN
The Bensamochan Law Firm, Inc.
9025 WIlshire Blvd., Suite 215
Beverly Hills, CA 90211

10461 Quail Canyon Road, LLC
10461 Quail Canyon Road
El Cajon, CA 92021

15428 Sleepy Creek Road, LLC
15428 Sleepy Creek Road
El Cajon, CA 92021

22842 Hatteras Street, LLC
22842 Hatteras Street
Topanga, CA 90290

23600 Ladrillo Street, LLC
23600 Ladrillo Street
Woodland Hills, CA 91367

5100 Calenda Drive, LLC
5100 Calenda Drive
Woodland Hills, CA 91367

A&E Lanscape
926 Leaslie Rd Apt B
El Cajon, CA 92020

ADP, Inc
1 ADP Blvd.
Roseland, NJ 07068-1728

Agned Kwon Simone
3 Silvedrleaf Dr.,
Palos Verdes Peninsula, CA 90274

Amazon Capital Services
PO Box 035184
Seattle, WA 98124-5184

Arlene Carlos
7356 Etiwanda Ave.
Reseda, CA 91335

Atoosa Javaheri
5336 Corteen Pl # 7
Valley Village, CA 91607

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                              **F 9013-3.1**

| In re: | CHAPTER **11** |
|---|---|
| **Destinations to Recovery, LLC**<br><br>Debtor(s). | CASE NUMBER **1:24-bk-11877** |

Xenia, GA 90281
22A Paloma Ave.
Baback Bob Gabbay MD Inc
5016 Parkway Calabasas Unite 212
Calabasas, CA 91302

BMO Bank N.A.
c/o Bank of the West
P.O. Box 5732
Carol Stream, IL 60197

BMO Bank N.A.
c/o Bank of the West
Wolkers Kluwer Lien Solutions
PO Box 29071
Glendale, CA 91209

BMW Financial Services N.A., LLC
PO Box 78103
Phoenix, AZ 85062-8103

Britany Barlow
Guardian ad Litem for S.H.
The Pride Law Firm
2831 Camino del Rio S, Ste 104
San Diego, CA 92108

Concentra
PO Box 3700
Rancho Cucamonga, CA 91729-3700

CSC-Lawyers Incroporating Services
c/o Kapitus LLC
Agent for Service of Process
2710 Gateway Oaks Dr. Ste 150N
Sacramento, CA 95833

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349

CT Corporation System
c/o BMO Bank N.A.
Agent for Service of Process
330 N Brand Blvd.
Glendale, CA 91203

Daniel A Samson
20951 Burbank Blvd. Suite D
Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                                                                                                                **F 9013-3.1**

| In re: | CHAPTER **11** |
|---|---|
| **Destinations to Recovery, LLC** | CASE NUMBER **1:24-bk-11877** |
| Debtor(s). | |

320 South Canal Street
Chicago, IL 60606

David Gabbay
10530 Wilkins Ave.
Los Angeles, CA 90024

Dell Business Credit
PO Box 5275
Carol Stream, IL 60197

Devine Christopher
5477 Nestle Ave. # 9
Tarzana, CA 91356

Dewey Pest Control
PO Box 7114
Pasadena, CA 91109-7214

Dreamscape Marketing LLC
6716 Alexander Bell Dr Ste 225
Columbia, MD 21046

Edith Moses
28825 Timberlane Street
Agoura Hills, CA 91301

Emily Rotenberg
30469 Via Victoria
Rancho Palos Verdes, CA 90275

Evan Malone
5855 Sunny Creek Rd.,
Carlsbad, CA 92010

Faggioli Enterprises, Inc
2816 Honololulu Ave. # 823
Verdugo City, CA 91046

FedEx
PO Box 7221
Pasadena, CA 91109

Felix Carpet Clinic
13258 Birch Tree Lane
Poway, CA 92064

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0611

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

| In re: | CHAPTER **11** |
|---|---|
| **Destinations to Recovery, LLC**<br><br>Debtor(s). | CASE NUMBER **1:24-bk-11877** |

Stockton, CA 95210
Golden State Overnight
PO Box 31990
HandyJuan or Juandyman
876 Phioenix Ave.
Ventura, CA 93004

Hansen Hunter & Co P.C.
7080 SW Fir Loop Suite 100
Portland, OR 97223

Holt Brian R MD PC
1346 N Laurel Avenue # 103
Los Angeles, CA 90046

Honda Financial Services
P.O. Box 60001
City Of Industry, CA 91716

Image 2000 Inc
26037 Huntington Lane
Valencia, CA 91355

Integrated Health Systems LLC
PO Box 23072
Overland Park, KS 66283

IPFS Corporation of California
PO BOX 412086
Kansas City, MO 64141

Irit Bar-Nester
6234 Lubao Ave.,
Woodland Hills, CA 91367

Jennifer Costick
10103 Cristobal Dr.,
Spring Valley, CA 91977

Kapitus LLC
2500 Wilson Blvd, Suite 350
Arlington, VA 22201

Karin Harel
1353 Warner Ave
Los Angeles, CA 90024

Kaylee King
18838 Vista del Canon Unit E,
Newhall, CA 91321

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re: | CHAPTER **11** |
|---|---|
| **Destinations to Recovery, LLC**<br><br>Debtor(s). | CASE NUMBER **1:24-bk-11877** |

K & P Alpine, LLC
1460 Pinto Rosa Dr.
Las Vegas, NV 89121

Kipu Systems, LLC
55 Alhambra Plaza 6th
Miami, FL 33134

Labo & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Ste 801
Oakland, CA 94612

Leah Thibault
25399 The Old Rd Apt 7105
Stevenson Ranch, CA 91381

Live Scan and More
8685 Wilshire Blvd. #13
Beverly Hills, CA 90211

LLJ Adler WCCII, LLC
c/o Adler Realty Investments, Inc.
21031 Warner Center Lane, Suite C
Woodland Hills, CA 91367

Los Angeles Dept of Water & Power
P.O. Box 30808
Los Angeles, CA 90030

Madeline Jansen
1909 Pelham Ave., Unit 104
Los Angeles, CA 90025

Mark Kempf and Collen Kempf
Daniel J Williams, Esq.
Law Office of Daniel J Williams
3990 Old Town Ave., Ste 202-A
San Diego, CA 92110

Mark Kempf, and Colleen Kempf
Tina M Robinson, Esq.
Robinson Law Firm, PC
6755 Mira Mesa Blvd., Ste 321
San Diego, CA 92121

Mercedes Scientific
PO Box 850001
Orlando, FL 32885-0123

Mitel Inc
PO Box 53230
Phoenix, AZ 85072-3230

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

| In re: | CHAPTER **11** |
|---|---|
| **Destinations to Recovery, LLC**<br><br>Debtor(s). | CASE NUMBER **1:24-bk-11877** |

8744 Marlborough Ave. Apt 4
San Diego, CA 92105

Omnicare LLC
One CVS Drive
Woonsocket, RI 02895

Padre Dam Municipal Water District
PO Box 6900
Artesia, CA 90702

Quadient Finance USA, Inc
PO Box 6813
Carol Stream, IL 60197-6813

Quadient Leasing USA, Inc
PO Box 123689
Dallas, TX 75312-3689

Raquel Urey
7062 Lanewood Ave. # 5
Los Angeles, CA 90028

Rebekah Norton
254 E Birch Street
Oxnard, CA 93033

RecoveryFit LLC
6231 LE Sage Ave.,
Woodland Hills, CA 91367

Relias Learning LLC
PO Box 74008620
Chicago, IL 60674

Ring Central Inc
PO Box 734232
Dallas, TX 75373-4232

Rock to Recovery
375 Aster Street
Laguna Beach, CA 92651

San Diego Gas & Electric Company
PO Box 25111
Santa Ana, CA 92799-5111

Sandra Zepeda
Kane Moon Esq.
Moon Law Group, PC
725 S Figueroa St., Ste 3100
Los Angeles, CA 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                 **F 9013-3.1**

| In re: | CHAPTER **11** |
|---|---|
| **Destinations to Recovery, LLC**<br><br>Debtor(s). | CASE NUMBER **1:24-bk-11877** |

28863 NitsArk Place

Chicago, IL 60673

Sparkletts
PO Box 660579
Dallas, TX 75266

Sundiata Kata
6060 Camerion Court
San Diego, CA 92139

Superior Court of California
County of Los Angeles
Van Nuys Courthouse
6230 Sylmar Avenue
Van Nuys, CA 91401

Tiffany Hall
20951 Burbank Blvd Suite D
Woodland Hills, CA 91367

Tyler Pools
5507 A Lewis Ln.,
Agoura Hills, CA 91301

United States Trustee
Woodland Hills Division
915 Wilshire Blvd., # 1850
Los Angeles, CA 90017

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071

Veliz Gardening and Tree Services
13174 Del Sur Street
San Fernando, CA 91340

Vital Record Holdings LLC
PO Box 80493
City of Industry, CA 91715-8493

Waste Management
PO Box 541008
Los Angeles, CA 90054

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                  **F 9013-3.1**